Howard A. Zeller, J.
Infant plaintiff, David Pierce, was seriously burned and injured in New York when a half buried gasoline tank exploded after he tossed a lighted firecracker into it. The incident occurred at a vacant lot adjacent to an Oneonta park on July 5, 1968 when he was 11 years of age. Thereafter this negligence action was commenced on his behalf against the four defendants. Defendant Helz moves to dismiss the complaint upon the ground it fails to state a cause of action (CPLR 3211, subd. [a], par. [7]) or, in the alternative, for summary judgment dismissing the complaint (CPLR 3212). The motion presents a choice-of-law problem.
*132 The domicile of each party in July, 1968 was, and still is, as follows: infant plaintiff, Florida; natural father and guardian ad litem, 'California; defendant Helz, infant’s stepfather, Florida; defendant Hetman, New York; defendant Pendleton, infant’s grandfather, New York. Defendant 'City of Oneonta is a New York municipality. The firecracker reputedly was purchased in South iCarolina as infant plaintiff was on an auto trip with his mother, two brothers and his stepfather, defendant Helz. The family planned to journey from Florida to New York and on to Wisconsin before returning to their home in Florida.
David was born in New York as an issue of the marriage of Donald and Mary Pierce. In 1961 Mrs. Pierce permanently moved to Florida with David and his two older brothers. A Florida court granted Mrs. Pierce a divorce in 1963 and awarded her custody of the three boys. In May of 1968 Mrs. Pierce married Stanley Helz, a Florida resident of several years, and they have continued to live in Florida with the three Pierce boys and a son born to them in February, 1970.
Defendant Helz avers, upon information and belief, that the firecracker which was later tossed into the gasoline tank was bought in South Carolina by infant plaintiff or one of his older brothers on their trip north. The City of Oneonta police report states defendant Helz admitted giving the firecrackers to the Pierce boys. The family arrived on July 2, 1968 at the home of defendant Pendleton, father of Mrs. Helz and grandfather of the Pierce boys. On July 5 infant plaintiff went with other children to a public park maintained by the City of Oneonta and wandered into the adjacent vacant lot owned by defendant Hetman upon which the half buried gasoline tank was located.
The complaint alleges the negligence of defendant Helz consisted of illegally furnishing firecrackers to infant plaintiff or permitting him to have them with knowledge that they would be exploded by him. Similar allegations .are made against defendant Pendleton. The alleged negligence of defendant city and defendant Hetman consisted of permitting an abandoned gasoline tank, containing an explosive material and being a dangerous instrumentality, to remain unguarded and unprotected in a place accessible to children playing in the park.
This motion to dismiss the complaint as to defendant Helz is based on the grounds that since May, 1968 he has stood m loco parentis to infant plaintiff; that Florida law, being the law of their domicile, prohibits a minor child from suing a parent or one in loco parentis with whom the minor child lives; and, that the law of their domicile should be applied to this New York tort action.
*133 The former, long-standing defense of intrafamily immunity for nonwillful tort has been overruled by the New York .Court of Appeals, and retrospectively as to matters which had not then gone to final judgment. (Gelbman v. Gelbman, 23 N Y 2d 434, decided January 9, 1969.) On the proper facts, such an intrafamily action as this can now be maintained in New York.
The Florida courts, on the other hand, do clearly recognize and sustain the principles of intrafamily and parental immunity to nonwillful tort liability. In the recent case of Denault v. Denault (220 So. 2d 27) a Florida appellate court affirmed the dismissal of a complaint on the basis of family immunity on the authority of Meehan v. Meehan (133 So. 2d 776 [Fla.]) sand. Richard v. Richard (203 So. 2d 7 [Fla.]), noting that it was in nowise persuaded that Florida’s rule of parental immunity should be abrogated.
The immunity of one in loco parentis to liability to an intrafamily tort suit also apparently would be recognized by the Florida courts. (See Williams v. Youngblood, 152 So. 2d 530, 533; Weigl v. Ombres, 106 So. 2d 614.)
A prime consideration in the Florida courts’ adherence to the intrafamily tort immunity rule is the prospect that such a suit can be disruptive of family unity. In the instant case defendant Helz’ affidavit states1 that his defense counsel is presently being provided on a nonwaiver basis as to liability through a home owner’s liability policy issued on the Helz residence in Florida by a South Carolina based insurance company. The complaint demand is greater than the policy limits even if coverage should be accorded defendant Helz in the event infant plaintiff recovers a judgment against him. In the event of recovery defendant Helz would be exposed to personal liability for any amount of the judgment in excess of policy limits and, in event policy coverage is denied, for the entire judgment sum. Conjecturally family unity in such ease could come into jeopardy.
The primary concern and interests of the State of Florida here are the protection and preservation of the family unity of its domiciliaries, the disruption of which unity might create public charges, disrupt family and community peace and place a burden on its courts. Both the threat and the possible consequences are deemed considerations of ‘ ‘ dubious prophecy ’ ’ in New York. (Badigian v. Badigian, 9 N Y 2d 472, 474.)
New York State’s interest in this litigation is that an alleged wrong was committed in New York State to infant plaintiff who seeks redress in New York, where recovery would be allowed a New York domiciled infant on a proper case being made. The *134 interests of the defendants other than Helz are totally New York oriented. The payment of money damages could rest on them alone should Helz be removed from this action. This is in the face of the possibility of his active participation in the acts leading to the injury to infant plaintiff. In New York the possession, furnishing or exploding of firecrackers is a class B misdemeanor. (Penal Law, § 270.00.) New York has a definite interest here in the application of its law. (See Dym v. Gordon, 16 N Y 2d 120; Tooker v. Lopez, 24 N Y 2d 569, 574.)
The rule of intrafamily tort immunity, recognized by the Florida courts as being within their power to change, must be considered an implementation of public policy. As it was in New York prior to Gelbman, application of the Florida rule does not abolish the right of action but bars the remedy by sustaining the defense of tort immunity. (See Denault v. Denault, 220 So. 2d 27 [Fla.], supra; Badigian v. Badigian, 9 N Y 2d 472, supra.)
In rejecting the conclusion that intrafamily litigation would necessarily undermine parental authority and disrupt the peace ofi the family, and thus contravene public policy, the court in Gelbman said (23 N Y 2d 434, 439, supra): “ By abolishing the defense of intrafamily tort immunity for nonwillful torts, we are not creating liability where none previously existed. Bather, we are permitting recovery, previously denied, after the liability has been established. ’ ’ This position in itself is strictly responsive to the principle of both jurisprudence and public policy that where a civil wrong has occurred the New York courts usually will accord a remedy and grant relief. Nor do the Florida courts in any wise reject this principle except where the tort occurs within the structure of an established family relationship. (See, e.g., Seabrook v. Taylor, 199 So. 2d 315 [Fla.]; Bullock v. Armstrong, 180 So. 2d 479 [Fla.]; Williams v. Youngblood, 152 So. 2d 530 [Fla.], supra; Gissen v. Goodwill, 80 So. 2d 701 [Fla.].)
The unanimous decision of the New York Court of Appeals in Gelbman (supra) while abrogating its long-held former rule of intrafamily tort immunity, does not abandon the principle of public interest in the preservation of family unity. The Gelbman court states, in fact (p. 437): “ family unity can only be preserved in this case by permitting the present action. ’ ’ Other basic considerations and principles led the New York Court of Appeals to permit intrafamily tort suits. (Gelbmam v. Gelbman, 23 N Y 2d 434, 437-438; see dissent of Fttld, J., in Badigian v. Badigian, 9 N Y 2d 472, 474-482 [1961].)
*135 The dissent of Judge Fulo in Badigian (supra) is noted in the unanimous decision of the court in Gelbman (supra) as being an immediate and persuasive precursor to its decision to overturn its former rule against intrafamily tort actions. In dissenting, Judge Fulo said in part (pp. 474-475): “ If the present decision [affirming dismissal of an intrafamily tort suit complaint] were necessary to preserve the integrity of the family, I would subscribe to it. But I do not believe that it is. * * * The doctrine of family immunity, which underlies the holding, is based on dubious prophecy and, at least when applied to deny redress in * * * negligence cases, is wrong in principle and at odds with justice and modern-day realities.” Judge Fulo continued (p. 476): “ There is a wrong, it may be said, but the remedy is withheld for reasons of fundamental public policy, namely, to prevent undermining parental authority and disrupting the peace of the family. That principle might be compelling * * * if consistently and evenhandedly applied whenever a child sues his parent. But, since innumerable exceptions and qualifications to its application have evolved, it can no longer serve as a forceful or valid basis for denying liability.” (See, e.g., Rozell v. Rozell, 281 N. Y. 106 [1939].)
_ There is no discernible generic conflict between these two jurisdictions concerning the basic and fundamental public policies here applicable, e.g., that usually every civil wrong should have a remedy and that family unity should be preserved. (These fundamental principles of public policy do not derive solely from the courts.) A scrutiny and evaluation of the policies involved in the laws in conflict is a part of the present New York choice-of-law rule.
The present position of the New York courts has been stated. The rationale of the Florida courts’ present rule, and certainly not a strange one to the courts of New York, is that when affording redress for a civil wrong comes into possible conflict with preserving family unity that conflict is not only irreconcilable but also that protection of family unity is of a higher order of concern and must prevail.
The jurisdictional difference in rules here substantially springs from a difference of opinion of the courts of these jurisdictions as to what rules of remedy and procedure are necessary to implement, protect and further these matters of similar basic public policy. Thus the problem here concerns the denial of a remedy, and generally the law of the forum has governed as to the nature, form and extent of the remedy. (Farris & Co. v. *136 Schluderberg, 141 Fla. 462, rehearing den. 142 Fla. 765; Young v. Pyle, 193 So. 2d 659 [Fla.]; see Kilberg v. Northeast Airlines, 9 N Y 2d 34, 41.) In this case the law of the place of the wrong and the law of the forum coincide and would generally sustain the present prosecution of this action against defendant Helz.
However, the court in Babcock v. Jackson (12 N Y 2d 473) “ rejected squarely and unequivocally the traditional choice-of-law rule which looked invariably to the law of the place of the tort.” (Miller v. Miller, 22 N Y 2d 12, 15; Tooker v. Lopez, 24 N Y 2d 569; Farber v. Smolack, 20 N Y 2d 198.) Nor do New York courts any longer give unwavering service either to the law of the forum or the law of the domicile. (See, e.g., Miller v. Miller, supra; Matter of Clark, 21 N Y 2d 478; Matter of Crichton, 20 N Y 2d 124; Dym v. Gordon, 16 N Y 2d 1201; Intercontinental Hotels Corp. v. Golden, 15 N Y 2d 9.)
Once the issue or issues have been defined and the policies embraced in the laws in conflict examined, the New York courts now “ examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.” (Dym v. Gordon, supra, p. 124; Tooker v. Lopez, supra, p. 574.) To state the New York conflict rule otherwise, “ as between two states, the law of that one which has the predominant, if not the sole, interest in the protection or regulation of the rights of the person or persons involved should, of course, be invoked.” (Matter of Clark, supra, pp. 485-486), and 11 the law of the jurisdiction having the greatest interest in the litigation will be applied and * * * the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.” (Miller v. Miller, supra, pp. 15-16.)
In examining the underlying policy considerations it is clear the conflict is not over basic policies, but rather between court promulgated rules of law implementing those policies. Succinctly, the Florida rule of family tort immunity is based on the fear that intrafamily suits could disrupt family unity. After years of critical examination, ambivalence, inroads on the rule and a reassessment of social changes since adoption of the tort immunity rule in Sorrentino v. Sorrentino (248 N. Y. 626 [1928]) the New York courts have rejected this view as conjectural, wrong in principle, at odds with justice and modern day realities and an unjustifiable shield to a conceded wrong. (Badigian v. Badigian, 9 N Y 2d 472, 475, supra; Gelbman v. Gelbman, 23 N Y 2d 434, supra.) This is not to minimize the *137 importance of protecting family unity, which both New York and Florida equally recognize but thereafter arrive at divergent rules based on appositive conclusions concerning the fragility of the family unit and the order of priorities of other principles and policies. However, the balance of qualitative interests here rests convincingly on the side of applying New York law.
Even if Florida law were to be applied a question of fact would exist whether defendant Helz had a status of in loco parentis to David Pierce. ‘1 Whether a stepfather with whom a minor resides stands in loco parentis is generally a question of fact to be resolved in the same manner as other factual problems arising in common-law actions.” Where the evidence does not compel an inference that 11 the defendant had a full and complete parental interest in the well-being and general welfare of the infant plaintiff ”, the issue of in loco parentis status should not be resolved as a matter of law. (Rutkowski v. Wasko, 286 App. Div. 327, 331-332.) The question of in loco parentis status is similarly treated as a question of fact by the Florida courts. (Weigl v. Ombres, 106 So. 2d 614 [Fla.], supra.)
The claimed parental relationship here arose approximately seven weeks before the injury with the marriage on May 10, 1968 of defendant Helz and this infant plaintiff’s mother. The infant plaintiff and his brothers since May 10,1968 have resided as members of the Helz family. Defendant Helz’ moving affidavit states that since the marriage, he has participated in all phases of infant plaintiff’s life and living, including his home, school, recreation and social activities. He avers that from May 10,1968 to January 30,1970 he provided at least 50% of the support of infant plaintiff and since January 1, 1970 has provided 100% of his support. Defendant Helz further states that he and his wife have paid directly or from insurance medical bills in excess of $15,000 to treat infant plaintiff’s injuries.
These facts, while presently unrefuted, do not establish as a matter of law that defendant Helz had an in loco parentis status within the seven weeks preceding the accrual of this cause of action, or even subsequently, if there be such a thing as an after-acquired defense to a committed tort.
However, this decision is not based upon this factual issue if Florida law were to be applied but rests upon the choice of New York law for this action.
The motion of defendant Helz in its entirety should be denied.