Bertram Harnett, J.
There seems need for a rationale of two fundamental upheavals worked in New York law by recent and significant high court cases. One allows family members to sue each other for negligence, the others allow one joint tort-feasor to charge another joint tort-feasor for contribution of his apportionate share of responsibility in causing an accident. Taken together, they affect a parent whose child is injured by a third party, under circumstances where the third party argues the parent himself is wholly or partially responsible for the happening, and should therefore bear at least part of the damages.
In light of the ranging authorities and principles required to synthesize the issues implicit in this proceeding, the court feels it useful to precede its opinion with this topical benchmarking:
I. THE CASE HERE
II. THE LEGAL CONTEXT
A. GELBMAN (iNTRAFAMILIAL TORTS) AND DOLE (CONTRIBUTION BETWEEN JOINT TORT-FEASORS)
B. RECENT FLURRY OF INTERPRETING DECISIONS
III. GENERAL EFFECT OF PARENTAL MISCONDUCT
A. IF CONTRIBUTORILY NEGLIGENT
B. IF A JOINT TORT-FEASOR
IV". GELBMAN FLATLY ABOLISHED INTRAFAMILY NEGLIGENCE IMMUNITY
A. HOLDING OF GELBMAN
B. REASONING UNDERLYING GELBMAN
C. SPECIFIC RECOGNITION OF PARENTAL INDEMNITY POSSIBILITY
D. INSURANCE DOES NOT DETERMINE LIABILITY
E. CONCLUSION
V. ALL IN THE FAMILY-NEW DIMENSIONS IN FEAR
A. THE CHILD’S LEGAL RIGHTS
B. THE TILL
0. WILL THE PARENT HINDER SUIT?
VI. THE INSURANCE BUGABOO !
*525 VII. DOLE-KELLY GIVES LEGAL BIGHTS AS BETWEEN JOINT TORT-FEASORS
VIII. “ SPECIAL CIRCUMSTANCES ” GOES TO WHETHER THEBE IS A TORT IN THE FIRST PLACE
IX. NECESSITY, AND FAILURE HEBE, TO PLEAD A GOOD CAUSE OF ACTION
and so we begin.
I. THE CASE HEBE
The ease here of Clayton Hairston and his eight-year-old daughter Barbara invokes the problem. Mr. Hairston brought an action for damages on his own behalf and as guardian for Barbara after she was hit in May, 1972 by a car owned by Claude, and operated by James, Broadwater. The Broadwaters, in turn, counterclaimed against Mr. Hairston, seeking an apportionment between them of the damages, claiming that Mr. Hairston’s own parental negligence caused or contributed to the accident. Mr. Hairston moves now to strike that counterclaim, arguing that, whatever was his duty to his daughter, “ unknown third parties ” cannot interject themselves into parent-child obligations.
II. THE LEGAL CONTEXT
There are relatively recent legal changes in New York concerning both intrafamily torf liability apd joipt tort-feasor contribution.
A. GELBMAN (INTBAFAMILIAL TORTS) AND DOLE (CONTRIBUTION BETWEEN JOINT TORT-FBASOBS)
Once upon a time in New York, parents and children had immunity from each other in suits for negligent injury. But then, in 1969, the Court of Appeals, in Gelbman v. Gelbman (23 N Y 2d 434), turned over the law and permitted a mother to maintain a suit against her 16-year-old son for damages resulting from his negligent automobile operation. In the court’s own words (p. 439) it was “ abolishing the defense of intrafamily tort immunity ”, (See Juszczak v. City of New York, 32 A D 2d 824.)
Dole v. Dow Chem. Co. (30 N Y 2d 143) and Kelly v. Long Is. Light. Co. (31 N Y 2d 25), also newly arrived decisions (by judicial standards), rule that joint tort-feasors held liable for a plaintiff’s injuries are entitled to contribution from each other in proportion to their relative responsibilities.
Putting it all together (another newly arrived expression, this time by semantic standard?), the Broadwaters say that if *526 the father was negligent contributing to his daughter’s injury, he is a joint tort-feasor with them and he should contribute to the damages in the proportion of his fault, citing Bole. Mr. Hairston staunchly resists, arguing that counterclaim torts of inadequate parental supervision cannot be allowed, even after Gelbman, since they erode family unity, that such a counterclaim may limit the child’s recovery, and that harmful insurance implications will follow where he might be without separate counsel to defend his case because of insurance policies which disclaim coverage for intrafamily lawsuits.
B. RECENT FLURRY OF INTERPRETING DECISIONS
There is limited but mixed authority in this area. In Sorrentino v. United States (344 F. Supp. 1308 [E. D. N. Y., 1972] ), under facts almost identical to this case, the court permitted without qualification the amendment of the automobile owner-driver’s answer to include a counterclaim against the claimed negligently supervising parent.' This case has been cited without disapproval by the Appellate Division, Second Department. [Moreno v. Galdorisi, 39 A D 2d 450, 452.) Yet, other cases speak in terms of requiring “special circumstances” to be shown before a contribution claim will be sanctioned against the parent of an injured child. (Marrero v. Just Cab Co., 71 Misc 2d 474; Fake v. Terminal Hardware, 73 Misc 2d 39.) And some courts have expressed doubt that strangers to the family mold can claim parental negligence in an action brought on behalf of the child. (See Bilgore v. Rennie, 72 Misc 2d 639; Collazo v. Manhattan & Bronx Surface Tr. Operating Auth.. 72 Misc 2d 946; Kiernan v. Jones, 73 Misc 2d 829.)
III. .GENERAL EFFECT OF PARENTAL MISCONDUCT
Analytically viewed, a person resisting a parent who sues both on his own behalf and that of his child has two avenues on which to bring parental misconduct to the curtailment of his liability.
A. IF CONTRIBUTORILY NEGLIGENT
The first avenue runs wholly in the primary lawsuit, and lasts only so long as contributory negligence survives under New York law. Here, the defendants may assert the parent’s negligence only to defeat the parent’s own action for reimbursement of expenses related to the child’s injury. (Juszczak v. City of New York, 32 A D 2d 824, supra; Miller v. Rankin, 10 A D 2d 695; Bailey v. Roat, 178 Misc. 870.) This defense is implicit in the affirm ¡five action, and, since the parent as a *527 negligence plaintiff must show his freedom from contributory negligence in order to recover, it need not be separately pleaded. By statute, the contributory negligence of the parent, however, cannot be attributed to the child in the action brought on his behalf. (General Obligations Law, § 3-111.) This avenue never reaches the child.
B. IF A JOINT TORT-FEASOR
The second avenue, running through Dole and Kelly, is paved by the defendant’s placement of counterclaim, third-party claim, or cross claim, and does touch the child. (CPLR 3019, 1007.) Technically, the courts can sua sponte deem a cross claim to be made without formal filing (Stein v. Whitehead, 40 A D 2d 89). Here, the defendants necessarily argue the parent is a tortfeasor by the parent’s own conduct and to the extent the parent jointly causes injury to the child he is liable to contribute to the nonfamilial defendant in his apportionate share of the fault. The parent’s tort may come by direct act or failure to act, related in some way to the incident cited in the complaint. (Murphy v. Appelli, 273 App. Div. 261.) It may therefore include inadequate custodial or supervisory care owed to the child which, when isolated, is a tort against the child. Where this tort is actually spelled out, apportionment between joint tort-feasors follows faeilely under Dole. Conceptually viewed, however, the parent’s act can instead, or also, be a tort against the defendant, setting up a classic indemnity claim by the defendant against the parent. This might conceivably arise, for instance, in an aggravated situation where a parent directs a tiny tot onto a crowded high-speed escalator and the tot is hurt and the operator is claimed liable for inadequate safeguard.
IV. GELBMAN FLATLY ABOLISHED INTRAFAMILY NEGLIGENCE IMMUNITY
We believe that Gelbman in word and spirit lays to rest the doctrine of intrafamilial tort immunity.
A. HOLDING OF GELBMAN
There is apparently some concern afoot that torts between parent and child violate notions of intrafamily immunity which somehow survive Gelbman. The court believes, however, that the unanimous decision in Gelbman has dispelled any residual common-law barrier to ordinary negligence claims between family members. (See Tobin v. Grossman, 24 N Y 2d 609, 613.) Strictly speaking, Gelbman permitted a parent to sue for dam *528 ages claimed resulting from his child’s negligence. But, the Court of Appeals specifically treats the reverse situation of child suing parent, as well, and has effectively paved the way for the parent sharing in payment of the child’s total damages to the extent of his relative fault. .(Gelbman v. Gelbman, supra, pp. 437-438; see Guilmette v. Ritayik, 39 A D 2d 339; Howell v. Perri, 60 Misc 2d 871; Zelby v. Omansky, 61 Misc 2d 199.) Indeed, the parent, under Gelbman, can be liable to the child the whole way, with or without codefendants or outside claimants, dependent upon the particular conduct involved.
B. SEASONING UNDERLYING GELBMAN
The ghost of insurance stalks the Gelbman-Dole-Kelly avenue, or “ revolution ” as Justice Fein characterized it in Collazo v. Manhattan & Bronx Surface Tr. Operating Auth. (72 Misc 2d 946, 950, supra). Some believe that the Court of Appeals in. Gelbman is not to be taken in broad terms, that the decision maintains an essential theme of available insurance proceeds (Kiernan v. Jones 73 Misc 2d 829, supra [McCaffrey, J.]), or perhaps applies only in limited types of torts like automobile accidents, which typically involve insurance. (Collazo v. Manhattan & Bronx Surface Tr. Operating Auth., supra.)
We disagree with these notions. They seem contrary to the express language of Gelbman, which states (p. 439) it is “ abolishing the defense of intrafamily tort immunity for nonwillful torts ”. Gelbman says it is “ permitting recovery, previously denied ”. Earlier in the opinion, the court had pointed out the anomalies to the old rule. These included permissible suits by children of legal age, tolling of Statutes of Limitations to permit suit at majority, as well as permissible suits for property damage, on contracts, and as to wills and inheritances. The rights of children to sue parents for willful torts and even for automobile accidents involving business uses were flatly acknowledged. The court said (p. 438): “ These exceptions neither permit reconciliation with the family immunity doctrine, nor. provide a meaningful pattern of departure from the rule. Rather, they attest the primitive nature of the rule and require its -repudiation. We, therefore, overrule our decisions in Sorrentino [248 N. Y. 626], Cannon [287 N. Y. 425] and Badigian [9 N Y 2d 472] ”. At the top of page 438 in Gelbman, the court introduces its reasons “ for the abolition of the immunity rule ”. Pages 436 and 437 are replete with reference to changing the doctrine of immunity, which, on balance, gave way to the weightier public policy requiring that every civil wrong have a remedy. (See Pierce v. Helz, 64 Misc 2d 131, 135.)
*529 It is perhaps worth noting, as well, that the intrafamily immunity doctrine has been the source of much confusion and change in other jurisdictions, and that there is a ‘growing trend throughout the United States of courts abandoning it in favor of allowing negligence lawsuits between parents and children. (See Liability of Parent for Injury to Unemancipated Child Caused by Parent’s Negligence, 41 ALE. 3d 904 [1972].)
C. SPECIFIC RECOGNITION OF PARENTAL INDEMNITY POSSIBILITY
Perhaps the crowning touch is the court’s own reference (p. 438) to the previous exception to immunity involving automobile accidents and indemnity. “ There were exceptions even in those instances where the child’s suit arose as the result of an automobile accident * * * It was a common,case for the child to sue his parent’s, employer, even though that parent might subsequently be required to indemnify said employer.” (emphasis supplied).
D. INSURANCE DOES NOT DETERMINE LIABILITY
However, some still point to a small dictum in Gelbman (p. 438) to the effect that compulsory auto insurance' makes unreal the counterbalancing arguments of preserving family harmony. But, this point is only one of a lengthy catalog which the Court uses to show the obsolescence of the old immunity rule; it is in no way a qualification of the new rule. How could it be? Compulsory automobile insurance in New York today covers only to the extent of- $10,000 per child. What happens when the potential liability is substantially above that? See D’Ambrosio v. D’Ambrosio (60 Misc 2d 886, 888), where in a post-Gelbman case Mr. Justice Albert of this court found “ totally without merit ” a parent ’s'-contention that intrafamily immunity should be resurrected where the claim for the child’s injury far exceeds the amount of the parent’s liability policy limits. Automobile insurance is compulsory, but not necessarily in adequate amounts. While adequate auto insurance is available to electing parents, all sorts of other liability insurance are available, and widespread in today’s risk filled society. Moreover, insurance is ancillary to liability, not causative. Insurance is paid because people are liable, people are not liable because they have insurance. (See Smith, The Miscegenetic Union of Liability Insurance and Tort Process in the Personal Injury Claims System, 54 Cornell L. Eev. 645, 673 [May, 1969].) Where insurance alone is the test, that is first party coverage and then there is no question of fault. (See L. 1973, ch. 13.)
*530 E. CONCLUSION
From all of this, it is plain the Court of -Appeals meant to and did wipe out in all substantive aspect the defense of intrafapailial negligence immunity.
Y. ALL IN THE FAMILY-NEW DIMENSIONS IN FEAR
Three sizes of fear for the child seem to extrude from legal consciousness where this issue of child-parent tort liability is concerned. The first is that the child’s legal rights will be diminished. The second is that in some way the parent will use the child’s money if there is a recovery, perhaps to offset his own debt. Third, there is concern that a parent will hinder the suit if there is a possibility that-he is liable. (See, generally, 38 Fordham L- Rev., 138, 142, Torts-New York Abolishes Parent-Child Immunity Doctrine.) It is believed that an analysis of all three of these, points will show that there is no greater danger in the Gelbmcm-J)ole area, than in any other area of the law where the parent sits astride a child’s rights or money.
A. THE child’s LEGAL RIGHTS
Nothing in the contribution route affects the child’s legal rights. Nothing there affects the amount of any judgment legally renderable in favor of the child. Contribution is simply a device^ where upon a proper showing the parent shares with the nonfamilial defendant as a joint tort-feasor, if that proves to be the case.
Similarly, nothing in section 3-111 of the General Obligations Law bars a contributee’s claim against an assertedly negligent parent. That statute merely states that the contributory negligence of the parent is not imputed to the child in the child’s action to recover damages for personal injury. In plain terms, it prevents parents’ acts from barring any ' recovery for a child’s injuries. (Kowalski v. Mohsenin, 38 A D 2d 274.) No such result will accrue from parental contributions towards the child’s damages. The child’s pain and suffering of an injury caused by negligence of several parties, including a parent, will be fully recoverable in law regardless ' of the relative shares of the financial damage hltimately assessed.
B. THE TILL
The ■ safeguards which are used elsewhere in the law to protect infants’ rights and funds apply equally here. There.. *531 is after all no reason to treat personal injury proceeds as a unique source of funds, subject to extraordinary safeguard, even to the distortion of the rights of others. Separate guardianship and trust accounts under judicial scrutiny are the legal protection for infants so that damages awarded for their pain and suffering are not invaded to pay the parents’ debt,- (CPLR 1201, 1206.)
Nor does the presence of insurance proceeds make the child any safer from an avaricious parent. Such a parent can go into the child’s assets, if unprotected by trust, whether those assets are insurance proceeds or the parent’s own debt.
C. WILL THE PARENT HINDER SUIT?
Finally, it is argued that a parent will not permit A child to sue if the parent, to take the.most extreme case, is to be wholly liable. The obvious answer there is that the child should not be able to recover from a stranger who, by lack of his own contributing negligence, is not liable..
If the parent is' to share partially in the liability, he may want to proceed to suit anyway to get the stranger’s share.
But, if the parent does block the procedure because, of the fear of his partial liability, how does that differ in policy context from where thé parent can prevent a valid child suit directly against hinr under Gelbman, where no stranger is even involved. The practical possibility is constant in the familial relationship vis-a-vis all things legal. While parental hindrance is always a source of concern in parental liability to a child, it does not roll back direct parent-child liability under Gelbman anymore, nor should it by the same token limit partial parental liability from the contributive consequences of Dole-Kelly.
"VT. THE INSURANCE BUGABOO!
The fact that Gelbman-Dole-Kelly has an abrasive impact on common existing insurance policy provisions is not a signal for lower courts to erode the authority of those cases. More, it is notification to the Legislature and State insurance officials that time has marched on in familial situations, and the need is -at hand to review and revise socially unresponsive institutional practices.
The past concern of fraud in intrafamilial claims is laid at rest by Gelbman. The Court of Appeals points out (p. 439) that fraudulent lawsuits are not encouraged by abolishing intrafamily immunity. The jury .system is relied upon to distinguish between valid and fraudulent claims, ‘ ‘ The definite and vital *532 interest of society in protecting people from losses resulting from accidents should remain paramount.”
VII. DOLE-KELLY GIVES LEGAL BIGHTS AS BETWEEN JOINT TORTFEASORS
The proposition may be put, that even if a child could sue a. parent under Gelbmcm, a third party cannot participate in that right under Bole-Kelly because, in effect, if the parent is uninsured, the total family intake from the stranger’s insurer will be reduced. We submit this is a misconception of third-party rights clearly established by Bole-Kelly and a manifestation of relentless desire to tilt insurance proceeds to the pockets of an injured child regardless of relative fault. Bole-Kelly is not only procedural, it governs the substantive rights of joint tort-feasors as between themselves. If a parent is a joint tort-feasor he is exposed. As between joint tort-feasors, their liability is apportionate to fault regardless of who is covered by insurance. Justice Bryant ruled in Smith v. Employer’s Fire Ins. Co. (72 Misc 2d 524) that liabilities resulting from Bole in a multiple party automobile accident case exist independent of the automobile liability insurance problem between husband and wife under subdivision 3 of section 167 of the New York Insurance Law.
There is no indication that Bole is jneant to be relaxed to maximize the aggregate intake of insurance proceeds to a family sheltering a joint tort-feasor. Nobody else gets out from under Bole because he is not insured. There remains the consideration of justice to the nonfamiliál defendant involved, in paying only his fair share under the law. Under Bole and Kelly, he may be liable after contribution for only so much.
VIII. “ SPECIAL CIRCUMSTANCES ” GOES TO WHETHER THERE IS A TORT IN THE FIRST PLACE
The “ special circumstances ” described in the literature are not special to Bole-, rather they go to the calculation of the parent’s conduct as a tort in the first place. They do not connote anything special beyond that threshold léve! of pleading substance needed to' support a Valid cause of action for tort. Like any claim, one for contribution depends upon the actionable breach of'some legal duty by the claimed contributor, either towards the woúld-be contributee, or towards the injured party seeking damage recovery in the first instance. (See Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339, rearg. den. 249 N. Y. 511.) The test of its validity, or the right to assort it, i$ like unto *533 any legal pleading: does it state a cause of action? Justice Helman picks this out very well in Marrero v. Just Cab Co. (71 Misc 2d 474, supra).
Regardless of Gelbman’s impact upon substantive intrafamily tort law, and Bole’s establishment of the right of contribution, a parent may''not be held liable on a simple complaint or for contribution unless he commits a tort. And, in general, mere lack of supervision over a child who becomes involved in an accident with a third party is not a tort. There is no absolute vicarious parental liability for untoward offspring incident. (Cf. Staruck v. Otsego County, 285 App. Div. 476, rearg. den. 286 App. Div. 976.) Tort by parental default is a tough proposition, legally, factually, and socially. It is hard to make out because of the facts of life, and under ordinary circumstances, a parent will not be liable for faulty supervision. But, everyone in society is entitled to reasonable safeguard of person, and Gelbmcm, designed to destroy immunity, is not meant to create new immunities. The principle in New York that a parent can be negligent in supervising children goes back to the horse and buggy days (but literally) in Weil v. Dry Dock East Broadway & Battery R. R. Co. (119 N. Y. 147 [1890]); (see Dehrmann v. Beck, 61 App. Div. 505; Novak v. State of New York, 199 Misc. 588.)
Factors special to the situation, which put a parent on notice of the need for unusual supervision, or of a child’s propensity or susceptibility to danger, or which reflect conduct which in some marked way delineates parental culpability, may make out a case at law. Requisite factors of hazard and neglect must offer themselves before a parent can be deemed to have so offended standards of care and responsibility as to have breached a legal duty to a child, or to a stranger. (See Fake v. Terminal Hardware, 73 Misc 2d 39, 40, supra [Casey, J.].) They are simply the circumstances showing the unreasonable conduct which adds up to a tort. Manifestly this is not to say, as some would, that a parental custodial breach can never be a tort. Such a result would depart from established behavioral norms which protect children and reduce the paramountcy of civil recompense for injury described in Gelbman.
IX. NECESSITY, AND FAILURE HEBE, TO PLEAD A GOOD CAUSE OP ACTION
The determinative question in every parent-child contribution case, then, is whether the claimed actions of the parent amount to tortious conduct. Here, however, the challenged counterclaim falls short of; stating a valid claim against Mr. *534 Hairston. It is a bare conclusory expression by the Broadwaters of negligent parental conduct. The factual basis for it, whether by supervisory dereliction or other claimed breach, is not set forth and even under the most liberal pleading rules, the pleading is deficient as a counterclaim. (See Atlantis Credit Corp. v. London S. S. Owners’ Mut. Ins. Assn., 28 Misc 2d 896, rearg. granted 31 Misc 2d 278.)
Accordingly, the counterclaim must be dismissed for failing to state a valid cause of action on which to found its claim.