MICHAEL S. GRANEY, an Infant, by ROBERT E. HESLIN, His Guardian ad Litem, Appellant, v. JOHN A. GRANEY, JR., Respondent.

Third Department, December 13, 1973.

*Lee, LeForestier & Frost (Jerome K. Frost* of counsel), for appellant.

*Donohue, Bohl, Clayton & Komar (Myron Komar* of counsel), for respondent.

GREENBLOTT, J. This is an appeal from an order of the Supreme Court at Special Term, entered December 26, 1972 in Albany County, which granted defendant's motion to dismiss the complaint.

The plaintiff and defendant are, respectively, a child and his parent. The pertinent facts are sufficiently set forth in the dissenting opinion of Mr. Justice STALEY. In our view, the determinative issue is the same as was presented in *Holodook* v. *Spencer* (43 A D 129 [decided herewith]) and requires the same conclusion. That issue is not, as indicated by Mr. Justice STALEY, whether *Gelbman* v. *Gelbman* (23 N Y 2d 434) abolished the *defense* of intrafamily immunity for nonwillful *torts.* We agree that that question would require an answer in the affirmative, and do not agree with Special Term that *Gelbman* is limited to situations where there is insurance. However, here, as in *Holodook,* conceding that no immunity defense could be asserted, the question is whether the plaintiff has alleged facts which even under the most liberal interpretation state a cause of action in the first instance. As we have today held in *Holodook,* such a cause of action has never been held to exist and does not exist under New York law as interpreted by the Court of Appeals or any of the four Appellate Divisions. Therefore, the order must be affirmed.

The order should be affirmed, without costs.

STALEY, JR., J. P. (dissenting). On August 7, 1967, Michael Sean Graney, an infant, four years of age, went to the playground of the Shaker Elementary School with his father, the defendant herein. While his father was watching a softball game on the playground site, Michael, who was playing on the school playground, attempted to climb an 11-foot-high sliding board and fell from the ladder of the slide injuring his left arm and elbow.

The complaint alleges that the defendant was negligent in allowing the infant plaintiff to stray out of his immediate control, and to engage in dangerous play activity in using the slide. One of the specific allegations in the complaint was that defendant's negligence consisted in defendant's " Permitting the infant plaintiff to engage in dangerous and unsafe activity in the aforesaid playground area, and to use the aforesaid dangerous slide, without any supervision and without any warning to him of the danger connected therewith ".

Defendant moved to dismiss the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action. The trial court dismissed the complaint, assuming it stated a cause of action, holding, however, that the doctrine of parental immunity for nonwillful tort of unemancipated infants was the prevailing law of the State of New York in situations other than those where the parent is covered by compulsory insurance and, therefore, the said doctrine of parental immunity was a bar to the infant plaintiff's action.

In *Gelbman* v. *Gelbman* (23 N Y 2d 434), the Court of Appeals abolished the defense of intrafamily tort immunity for nonwillful torts, and rejected the proposition that intrafamily litigation would undermine parental authority and disrupt the peace of the family and thus contravene public policy. In the *Gelbman* case the court stated (p. 439) as follows: " By abolishing the defense of intrafamily tort immunity for nonwillful torts, we are not creating liability where none previously existed. Rather, we are permitting recovery, previously denied, after the liability has been established."

The basic issue here is whether *Gelbman* v. *Gelbman* (*supra*) completely abolished the intrafamily immunity doctrine which had previously barred all suits for nonwillful torts or should intrafamily tort immunity be continued in noncompulsory insurance situations, particularly in situations involving parental omissions rather than affirmative acts.

The *Gelbman* case citing many exceptions to the rule of intrafamily tort immunity which had been approved by the

courts, held that the abrogation of the rule did not abandon the principle of public interest in the preservation of family unity stating (p. 437) : '' Family unity can only be preserved in this case by permitting the present action.''

Judge BURKE in the unanimous opinion of the court in *Gelbman* relied to a great extent upon Judge FULD's dissent in *Badigian* v. *Badigian* (9 N Y 2d 472), which case was overruled in *Gelbman,* in which dissent it was stated, in part (pp. 474, 476) : '' If the present decision [affirming dismissal of an intrafamily tort suit complaint] were necessary to preserve the integrity of the family, I would subscribe to it. But I do not believe that it is. * * * The doctrine of family immunity, which underlies the holding, is based on dubious prophecy and, at least when applied to deny redress in automobile negligence cases, is wrong in principle and at odds with justice and modern-day realities. * * *

'' There is a wrong, it may be said, but the remedy is withheld for reasons of fundamental public policy, namely, to prevent undermining parental authority and disrupting the peace of the family. That principle might be compelling * * * if consistently and evenhandedly applied whenever a child sues his parent. But, since innumerable exceptions and qualifications to its application have evolved, it can no longer serve as a forceful or valid basis for denying liability.''

In my opinion, the decision in *Gelbman* completely abolished the doctrine of intrafamily tort immunity in New York, and the right to sue should not depend on whether there is insurance available to protect the defendant parent. The absence of a compulsory liability insurance fact situation should not bar an action by an infant against a parent for an injury based on the parent's negligence. In such actions, the general rules of negligence of reasonableness and ordinary care should be applied, and whether the parent's conduct was that of an ordinarily reasonable and prudent parent under the circumstances should become an issue for the jury to decide. (*Pierce* v. *Helz,* 64 Misc 2d 131; *Zelby* v. *Omansky,* 61 Misc 2d 199; *Annacchino* v. *Annacchino,* 61 Misc 2d 636; *D'Ambrosio* v. *D'Ambrosio,* 60 Misc 2d 886; *Howell* v. *Perri,* 60 Misc 2d 871; *Gibson* v. *Gibson,* 3 Cal. 3d 914.)

The majority in the case of *Holodook* v. *Spencer,* 43 A D 2d 129, 132, by the same court sitting on this appeal with issues similar to those involved here, interpret the *Gelbman* case as applying to cases '' where a tort has clearly been committed and liability would most certainly have been imposed but for the

familial relationship between the parties." The majority further holds that a cause of action for nonsupervision by a parent of a child does not exist because such act or failure to act is not a tort.

The issue presented here is whether the alleged acts of permitting the infant plaintiff to engage in dangerous activity which should have been foreseen by the parent, and the failure to prevent injury by the failure of the parent to supervise or forewarn constitutes actionable negligence. It has long been recognized that parents, during their children's early years, have a duty to exercise reasonable care to protect them from injury, and that the parent's obligation to the child is commensurate with the risks reasonably to be perceived. (*Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455.)

" Parents owe a duty to care for their children who are so young and immature that they cannot care for themselves, and in so doing are bound to exercise such degree of care and prudence to promote their safety as, under all the circumstances, is reasonable and proportionate to the age and intelligence of the children, and to the known dangers, or dangers which might be known by the exercise of due care. In other words, parents are required to exercise that degree of care that a reasonably prudent person would exercise under the same conditions, and it must appear that the parent had some knowledge that the child was frequenting a dangerous area, and failed to warn the child or to take other adequate precautions.

" However parents are not required to do the impossible in caring for their children. They are not required to watch them every minute.

" Thus the parents and custodians of children who are non sui juris have a duty to use reasonable care to protect them against known hazards incident to their presence on a street or other public way, and to permit or suffer such a child to go or be upon a highway or street unattended may constitute negligence on the part of the parent or custodian, although it does not do so under all circumstances." (57 Am. Jur. 2d, Negligence, § 377.)

In the case of *Gibson* v. *Gibson* (3 Cal. 3d 914, 921), holding that an unemancipated minor child may maintain an action for negligence against his parent, the court stated: "We do recognize, however, that issues of parental discretion and supervision will occasionally be raised when children sue their parents in tort. In such situations, some jurisdictions, although abrogating a broad doctrine of immunity * * * have nevertheless retained a limited one where basic parental functions are

involved. [Citing *Goller* v. *White*, 20 Wis. 2d 402.] * * * However, we reject the implication of *Goller* that within certain aspects of the parent-child relationship, the parent has carte blanche to act negligently toward his child. * * * Although a parent has the prerogative and the duty to exercise authority over his minor child, this prerogative must be exercised within reasonable limits. The standard to be applied is the traditional one of reasonableness, but viewed in light of the parental role. Thus, we think the proper test of a parent's conduct is this: what would an ordinarily reasonable and prudent *parent* have done in similar circumstances? ''

In view of the abolishment of intrafamily tort immunity in New York, there will be some cases where a parent's negligence based on acts of omission, such as lack of supervision or failure to warn of foreseeable dangerous conditions will be actionable between child and parent. Where there is negligence, the rule is liability, immunity is the exception. The duty of vigilance to prevent injury is applicable to all human relationships, and no longer does the family relationship provide an exception.

In the light of *Dole* v. *Dow Chem. Co.* (30 N Y 2d 143), there have been a number of cases in which the defendant tort-feasor has moved to implead the parent of an infant plaintiff to recover a share of the award by reason of the alleged negligence of the parent. Some of these cases recognizing that a child may sue a parent for nonwillful torts, including ordinary negligence, have permitted impleader to allow the alleged tort-feasor to recover from the parents of the infant that part of the damages apportionable to the contribution of the negligence of the parent. (*Sorrentino* v. *United States*, 344 F. Supp. 1308 [infant riding his bicycle on public highway].; *Petersen* v. *City and County of Honolulu*, 51 Haw. 484 [infant burned by hot ashes in barbecue pit]; *Searles* v. *Dardani*, 75 Misc 2d 279 [infant pedestrian hit by automobile]; *Orphan* v. *Relyea*, 73 Misc 2d 1098 [infant injured by explosion of sauna heater]; *Hairston* v. *Broadwater*, 73 Misc 2d 523 [infant pedestrian hit by automobile].)

In my opinion, the holding in *Gelbman* completely abolished the doctrine of intrafamily tort immunity in New York and, under the circumstances here, the complaint should not have been dismissed.

Sweeney, Kane and Reynolds, JJ., concur with Greenblott, J.; Staley, Jr., J. P., dissents and votes to reverse in a separate opinion.

Order affirmed, without costs.