OPINION OF THE COURT
David O. Boehm, J.
In this action, the defendant, who is the mother of Lakiescha Titus, the infant on whose behalf this lawsuit was commenced, moves to dismiss the complaint on the ground that it fails to state a cause of action (CPLR 3211, subd [a], par 7).
*206 The issue presented for resolution is whether the tort alleged in the complaint is the permissible subject of a lawsuit by an infant against its parent under Gelbman v Gelbman (23 NY2d 434) or whether it is barred by the proscription of Holodook v Spencer (36 NY2d 35).
The facts are undisputed. On January 12, 1974, the defendant was frying chicken in the kitchen of her home. The infant plaintiff, then two years old, was in a playpen in the dining room. The defendant put some oil in the pan in which the chicken was frying, placed the pan on an electric stove, set the burner at "high”, and left the room. A few minutes later, the defendant smelled smoke, returned to the kitchen and found that the oil had ignited and the kitchen was ablaze. After a brief unsuccessful attempt to extinguish the flames, the defendant ran upstairs to call the fire department. By the time she came back downstairs, the fire had spread throughout the house. The defendant ran outside, enlisted the aid of a passerby, and rescued the infant plaintiff. Unfortunately, the child had already sustained burns over most of her body, and it is for the pain, suffering and medical expenses resulting therefrom that this lawsuit has been brought.
In Gelbman v Gelbman (23 NY2d 434, supra), the Court of Appeals reinstated a complaint in an action brought by the defendant’s mother against the defendant for negligence in connection with an automobile accident in which the defendant son was one of the drivers and the plaintiff mother was his passenger. In so doing, the court abrogated the absolute bar against intrafamilial suits for nonwillful torts previously laid down in Sorrentino v Sorrentino (248 NY 626), Cannon v Cannon (287 NY 425) and Badigian v Badigian (9 NY2d 472).
In Gelbman v Gelbman (23 NY2d 434, 437-438, supra) the Court of Appeals stated:
"It is now apparent that the Sorrentino decision can again be reaffirmed only if we conclude that the doctrine is essential for the purpose of preserving family unity. However, the invocation of that argument is not persuasive, as it would require us to conclude that family unity is promoted when a parent is prohibited from suing a child. It seems obvious that family unity can only be preserved in this case by permitting the present action * * *
"A more difficult but not insoluble question is presented when the child is suing his parent. However, as Judge Fuld stated in his dissenting opinion in Badigian, 'A rule which so *207 incongruously shields conceded wrongdoing bears a heavy burden of justification’ (9 N Y 2d 472, 475, supra) * * *
"We, therefore, overrule our decisions in Sorrentino, Cannon and Badigian. ”
Subsequently, however, in Holodook v Spencer (36 NY2d 35, supra), the Court of Appeals refused to allow lawsuits by children or others against parents for "negligent supervision”.
Holodook involved three factual situations. In one, a child fell from a slide and was injured while being supervised by his father; in a second, a child was injured by a lawnmower while being supervised by his mother. In Holodook itself, a child was injured when he darted out from between two parked cars and was struck by the defendant’s automobile. The defendant counterclaimed against the infant’s father, alleging that the father had been negligent in supervising his child, and that such negligence was a contributing cause of the accident.
In refusing to find liability, the Court of Appeals first explained its holding in Gelbman. "In abolishing the immunity defense, Gelbman allows suits between parents and children which would previously have been actionable between the parties absent the family relationship.” (Holodook v Spencer, 36 NY2d 35, 44, supra.)
It then went on to hold that where the duty, for the breach of which damages are claimed, is one that is an incident of the familial bond, liability will not attach. "[W]here the duty is ordinarily owed, apart from the family relation, the law will not withhold its sanctions merely because the parties are parent and child. This is the consequence of Gelbman. There, the duty to drive carefully was owed to the world at large and derived from the parties’ relation as driver and passenger; that the parties were also child and parent was a fortuitous fact, irrelevant to both the duty and to a determination of its breach. By contrast, the cases before us involve a parent’s duty to protect his child from injury — a duty which not only arises from the family relation but goes to its very heart. Gelbman did not pave the way for the law’s superintendence of this duty.” (Holodook v Spencer, 36 NY2d 35, 50-51, supra.)
The latest pronouncement on this subject from the Court of Appeals is Nolechek v Gesuale (46 NY2d 332). Here, Scott Nolechek, the plaintiffs intestate, sixteen years of age, was blind in one eye and had impaired vision in the other. Nonetheless, his father, the plaintiff, purchased a motorcycle for him. While riding another motorcycle with a friend, who was *208 riding Nolechek’s motorcycle, Scott Nolechek ran into a one-inch steel cable which had been placed between two concrete pillars by the defendants well before the accident, and was killed.
Nolechek’s father brought an action for wrongful death against the defendants and others. The defendants counterclaimed, alleging that the father was negligent in providing his vision-impaired son with a motorcycle.
The Court of Appeals reinstated Special Term’s denial of the motion to dismiss. In so doing, the majority rejected a proposed exception to the Holodook prohibition from suing for negligent supervision, finding instead that the father’s liability arose from an independent duty owed by the father to the defendants. "Parents are permitted to delegate to their children the decision to participate in dangerous activities, but they are not absolved from liability for harm incurred by third parties when the parents as adults unreasonably, with respect to such third parties, permit their children to use dangerous instruments.” (Nolechek v Gesuale, 46 NY2d 332, 339, supra.)
Significantly, the Nolechek court was divided in its analysis of the effect of its decision. In his concurring opinion, Judge Gabrielli points out an anomoly in the majority opinion: "[T]hird-party liability does not exist in the absence of a duty owed by the third-party defendant to the plaintiff (see, e.g., Barry v Niagara Frontier Tr. System, 35 NY2d 629; Rogers v Dorchester Assoc., 32 NY2d 553). In this case the well-established rule under Dole v Dow Chem. Co. (30 NY2d 143) precludes the counterclaim unless we also recognize the existence of a cause of action by the child against the parent.” (Nolechek v Gesuale, 46 NY2d 332, 342, supra, [Gabrielli, J., concurring].)
Judge Gabrielli would solve the dilemma by applying a "gross negligence” standard to suits between parents and children. Similarly, Judge Fuchsberg, concurring in result only, would find liability between parent and child predicated on yet a third and less restrictive test, that of "reasonable care under the circumstances.”
Nolechek does not really change the law of intrafamilial tort liability. A careful reading of the several opinions in it reveals that the bar of Holodook survives, but that courts should not be loath to find independent liability to third *209 parties who become the victims of admittedly negligent conduct between parent and child.
Illustrative of this principle is Goedkoop v Ward Pavement Corp. (51 AD2d 542). The court there had before it a case in which an infant had brought home some blasting caps left lying around a construction site. The infant’s father took the caps and placed them in a jar in the basement. Some two years later, the infant was injured while playing with the blasting caps. The infant and his father sued the construction company, and others, who subsequently attempted to amend their pleadings to include counterclaim against the father for negligence in keeping the blasting caps in his basement and thereby contributing to his child’s injuries.
Holding that the defendants were entitled to counterclaim against the father, the court stated: "It is not simply alleged that the father was not aware of his son’s activites; rather, the import of the counterclaims is that the father, with knowledge of the material, negligently maintained blasting caps in his basement. The duty not to negligently maintain explosives is a duty owed to all and is not simply a duty emanating from the parent-child relationship”. (Goedkoop v Ward Pavement Corp., 51 AD2d 542, 543, supra.)
In both Goedkoop and Nolechek, the parents were viewed as responsible on the counterclaims for breaching duties owed to the world in general. Thus, in Goedkoop, the court predicated liability on the father’s duty not to negligently house explosives, and in Nolechek, the court found that the father had a duty not to entrust his vision-impaired son with a motorcycle which, under such circumstances, constituted a "dangerous instrument”.
While neither Nolechek nor Goedkoop involved intrafamilial claims, the rationale of each is analogous to that of Gelbman, i.e., where the duty is one owed to the entire world, lawsuits involving nonwillful tortious conduct between parent and children may be maintained.
It would seem, aside from the enlarged area of liability to third parties which appears to result from Nolechek, that one real distinction between the Gelbman beyond the family duty and the Holodook failure to supervise exception would be whether the parent was directly responsible for the injury or whether the parent simply permitted the child to be in a position to do harm to himself or to others.
Thus, if in this case the child’s burns had been caused *210 because the mother had carelessly allowed the child to play with matches or unthinkingly had left matches so close to the playpen that the child could reach and ignite them, then clearly there would be a failure to supervise situation which would fall within the Holodook bar.
However, such is not the case. Here the child’s burns were directly related to what the mother did and, accordingly, her liability, if any, arises from the duty imposed by Gelbman, a duty of not negligently injuring others, including her own child.
In sum, then, the case now before the court must be resolved by answering two questions: (1) what, if any, was the nature of the conduct which caused the injury, and (2) to whom was the duty owed upon the breach of which liability must be predicated?
The answer to the first question can be ascertained by examining the conduct of the plaintiff vis-á-vis that of the defendant. Here, the infant plaintiff was passive; her conduct played no part in causing the injuries she sustained. The defendant, on the other hand, actively started the forces which resulted in the injuries complained of by leaving the pan, filled with oil, on the hot stove. Therefore, as this lawsuit does not involve any conduct by the infant plaintiff, it cannot be said to fall within the bar against "negligent supervision” lawsuits.
The second question may be answered by positing a hypothetical. Assuming the same conduct by the defendant, and further assuming, for the purposes of the hypothetical only, that that conduct was negligent, would a duty exist, and liability attach, as to someone else’s child had that child been in the plaintiff’s position? The question must be answered in the affirmative. The duty not to negligently allow fires to start is a duty owed to the world at large. It does not, in any sense, find its basis in the familial relationship. This case thus falls squarely within the scope of lawsuits between children and parents sanctioned by Gelbman v Gelbman (23 NY2d 434, supra).
Accordingly, defendant’s motion to dismiss is denied.
Plaintiff’s cross motion for summary judgment is also denied. In light of the particular facts of this case, it cannot be said that the conduct of the defendant was unreasonable as a matter of law, or that such conduct necessarily fell below the standard of due care applicable at that time and place. This is *211 a question of fact to be resolved by a jury (see, e.g., Ugarriza v Schmieder, 46 NY2d 471; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.03).