OPINION OF THE COURT
John P. Balio, J.
This is an application by the defendants, Thomas and Winifred Talbot, to dismiss the complaint for failure to state a cause of action (CPLR 3211, subd [a], par 7). The *38 defendant County of Otsego had joined in the application and has also requested dismissal of the claim asserted against the county.
The underlying facts are not at issue. The plaintiff, Frances Andrews, is the natural mother of the infant plaintiff, Joseph J. Andrews. Ms. Andrews voluntarily surrendered custody of the infant plaintiff to the Otsego County Department of Social Services (hereinafter Department). The Department then engaged the Talbots to provide foster care for the infant plaintiff. The contract for assumption of such responsibility was signed by Mrs. Talbot on December 14, 1979. The complaint alleges that the infant plaintiff sustained an injury to his eye on April 19, 1980 and that the injury was caused by the negligent supervision of the Talbots and the County of Otsego.
A brief discussion of the foster care system in this State may be helpful. The State has a constitutional duty to provide for the health, safety and welfare of those children in need of foster care. (NY Const, art XVII, § 1; Sinhogar v Parry, 74 AD2d 204, 214, mod on other grounds 53 NY2d 424.) The State Legislature has provided for the assumption of the constitutional mandate (see Social Services Law, art 6) and the Commissioner of Social Services has promulgated a regulatory scheme for the implementation of foster care services (see 18 NYCRR ch 2, subch C). Basically once the State assumes the burden of parens patriae and, through its designated agency (a county department of social services) places the child in a custodial setting, it (the department) has a duty to provide reasonable care and supervision. (Sinhogar v Parry, supra, p 215.) There are several options available to a county department. It may provide institutional care, or place the child in a group home or residence, with a licensed private agency, or in a foster family home. (See Social Services Law, §§ 374, 398; 18 NYCRR 427.1; Kadushin, Child Welfare Services [2d ed], pp 417-421.) When a department opts to place the child in a foster family home, it can no longer feasibly provide day-to-day supervision and hence, it contractually obliges the foster parent to provide constant reasonable care and supervision. (Smith v Organization of Foster Families, 431 US 816, 827.)
*39 When a county places a child under foster family care, it has an obligation to exercise care in the placement (see Social Services Law, §§ 377, 378; 18 NYCRR 405.1; 405.3) and to provide continuing supervision during the placement (18 NYCRR 428.3 [d], [e]). A county does not, by the mere fact of placement, relinquish its role as parens patriae nor its continuing obligation to protect the child’s health, safety, and welfare. Although the precise bounds of duty and liability have yet to be defined, a county may be held liable for negligent placement or supervision. (Bartels v County of Westchester, 76 AD2d 517.) In the present case, the complaint does not allege any negligence in the placement nor that the county had notice of prior incidences of misconduct or negligent supervision. (See, in this regard, Bartels v County of Westchester, supra.) However, at this stage of the proceedings all of the complaint allegations are deemed true, and the pleader is entitled to every favorable inference that may be drawn. (Siegel, New York Practice, § 265.) Liberally construed, the complaint states a cause of action against the county for negligent supervision. {Bartels v County of Westchester, supra; see, also, Faria v Catholic Home Bur. for Dependent Children, NYU, Aug. 24,1981, p 6, col 4.) The likelihood of success on the merits is not presently before this court. (See 4 Weinstein-KornMiller, NY Civ Prac, par 3211.36.) Therefore, the county’s application for dismissal is denied.
The Talbots have also moved for dismissal, claiming that since an infant child does not have a cause of action against a parent for the negligent failure to supervise (citing Holodook v Spencer, 36 NY2d 35, as authority), as foster parents, they should be treated in the same manner as natural parents.
Prior to the New York Court of Appeals decision in Gelbman v Gelbman (23 NY2d 434), a defense of intrafamily tort immunity barred a direct suit by an infant child against a parent for a nonwillful tort. However, the immunity defense did not apply to an action by an infant child against a foster parent. (Miller v Davis, 49 Misc 2d 764.) This conclusion was premised upon a determination by Special Term (Jasen, J.) that a foster parent who had not assumed any permanent responsibility for support of the *40 child and who was compensated by the then Department of Social Welfare for foster care services did not stand in a relationship of in loco parentis. A relationship of in loco parentis was then essential to extension of the immunity defense. (Rutkowski v Wasko, 286 App Div 327.)
In Gelbman v Gelbman (supra), the Court of Appeals abolished the immunity defense for nonwillful intrafamily torts. As in Miller v Davis (supra), the Gelbman case involved an action arising out of the negligent operation of a motor vehicle.
However, in 1974, the New York Court of Appeals held that an infant child does not have a direct cause of action against a natural parent for negligent supervision. (Holodook v Spencer, supra.) The court concluded that although Gelbman abrogated the defense of intrafamilial immunity for nonwillful torts, it did not create any new liabilities. Since the court in Holodook could find no prior judicial recognition of such a claim, it refused to create a new cause of action for negligent supervision, which was described as the breach of a duty which exists “because of the family relationship” (Holodook v Spencer, supra, at p 44).
Thus far, the New York Court of Appeals has extended the Holodook rationale solely to actions between siblings premised on negligent supervision. (See Smith v Sapienza, 52 NY2d 82.) A cause of action for negligent supervision has been recognized in suits between an infant child and a stepfather who was not in an in loco parentis relationship (Pierce v Helz, 64 Misc 2d 131), an aunt and uncle who provided temporary care during each day while the mother worked (Zalak v Carroll, 15 NY2d 753), grandparents (Barrera v General Elec. Co., 84 Misc 2d 901), and a private institutional home for foster children (Fox v Mission of Immaculate Virgin for Protection of Homeless & Destitute Children, 202 Misc 478, affd 280 App Div 993). Decisions recognizing the viability of the action for negligent supervision have relied on either of two theories: (1) the “family” member did not stand in a relationship of in loco parentis with the child (see, e.g., Pierce v Helz, supra)', or (2) the defendant voluntarily assumed a duty to provide reasonable care (see, e.g., Zalak v Carroll, supra). Further, even where the parent-child relationship does exist, courts have *41 not been anxious to apply the bar of Holodook whenever liability could be predicated upon affirmative acts (see, e.g., Hurst v Titus, 77 AD2d 157, affg 99 Misc 2d 205), rather than failure to supervise.
Research has not disclosed any reported decision in New York on the precise issue presented here: does an infant child have a cause of action against a foster parent for negligent supervision? The court concludes that he does.
First, no reported judicial authority in this State has extended the bar of Holodook beyond the biological family.
Second, in deciding whether or not to apply Holodook to the facts of this case, analysis of the ratio decidendi of those cases recognizing the viability of a cause of action for negligent supervision leads inescapedly to the conclusion that foster parents should be held liable for negligent supervision of a foster child.
In Miller v Davis (49 Misc 2d 764, supra), the court held that a foster parent who is compensated for his services does not stand in an in loco parentis relationship with the child. The status of a foster parent has not been altered since that decision, and recent judicial literature significantly supports the Miller conclusion.
“Foster parents, in the generally accepted meaning of that term, are contract service providers. The very existence of the status of foster parent arises out of a knowingly assumed contractual relationship between the State and the foster parents.” (Matter of Mavis M., 110 Misc 2d 297, 308.) Although a foster parent may develop significant emotional ties with a foster child, the duties owed to the child are grounded in a “knowingly assumed contractual relation with the State”. (Smith v Organization of Foster Families, 431 US 816, 845, supra.) As the letter contract for. foster care in this case reveals, the only specified duty “owed” to the child (and for which the Talbots are compensated at a specified rate) is to “provide services in accordance with applicable requirements of law.” Each foster parent is licensed for a period of one year, and each placement contract has a maximum term of one year. (Social Services Law, § 378, subd 2; 18 NYCRR 405.3.) There is no guarantee or assurance of renewal or exten *42 sion. In this respect, foster care placement is a temporary arrangement designed as an alternative to institutionalized care, and the county agency continues to be the legal custodian of the child. (People ex rel. Ninesling v Nassau County Dept, of Social Servs., 46 NY2d 382.) The natural parent continues to be responsible for the child’s support during placement. (Rockland County Dept, of Social Servs. v Brust, 102 Misc 2d 411.) The foster parent does not assume “all the obligations incident to the parental relationship” (Rutkowski v Wasko, 286 App Div 327, 331, supra), but only those responsibilities assigned by the agency as required by law. (Smith v Organization of Foster Families, supra, at pp 826-828; see Social Services Law, § 378; 18 NYCRR 444.6.) Indeed, the “temporary parent substitute must keep his proper distance at all costs to himself.” (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 205.) During foster care placement, the county department, as the statutory surrogate parent, stands in loco parentis (Wilder v Sugarman, 385 F Supp 1013,1025-1026), not the foster parent. (See Fox v Mission of Immaculate Virgin for Protection of Homeless & Destitute Children, 202 Misc 478, affd 280 App Div 993, supra.) Conceivably, a foster parent could voluntarily assume all of the obligations of parenthood as a matter of fact. (See People ex rel. Teitler v Haironson, 38 AD2d 949, 950 [Martuscello, J., dissenting].) However, the relationship does not arise by virtue of one’s status as a foster parent. (Miller v Davis, 49 Misc 2d 764, supra.)
The second theory of liability also applies here. The Talbots knowingly and voluntarily assumed a contractual duty to provide supervisory care for which they received compensation. Having undertaken the duty, they may and should be held responsible for any failure to use reasonable care. (Zalak v Carroll, 15 NY2d 753, supra.)
Third, the Talbots’ duty to provide care was created by contract, not “because of the family relationship”. (Holodook v Spencer, 36 NY2d 35, 44, supra.) At the time of placement, there was no familial bond between this infant plaintiff and the Talbots. His natural mother continued to be the legal guardian and the county his legal custodian. (Smith v Organization of Foster Families, 431 US 816, 827, *43 supra.) Although foster parents owe similar responsibilities to the foster child concerning discipline, food, clothing, housing, education and supervision as are owed to their own biological children, the nature of the required care and supervision is distinct. Foster parents must strive to provide a stable environment and at the same time, encourage, rather than discourage, the relationship of the foster child and natural parent and ease the return of the child to the natural parent. (See State ex rel. Wallace v Lhotan, 51 AD2d 252, 259.) This unique responsibility clearly differs from the supervisory functions of a natural parent. Moreover, the foster parent-child relationship is designed to be temporary, and the foster parent is obliged to surrender the child upon expiration of the term and perhaps sooner upon the institution of removal proceedings. (See, in this respect, Fox v Mission of Immaculate Virgin for Protection of Homeless & Destitute Children, 202 Misc 478, affd 280 App Div 993, supra.)
Counsel for the Talbots also urges that a number of foster parents assume their responsibility with a view towards adoption and that there may be increasing difficulties in finding suitable foster parents in the future. The court can appreciate these concerns. However, it must be noted that general legislative policy prefers the ultimate return of the child to the natural parent. (Social Services Law, § 384-b, subd 1; Smith v Organization of Foster Families, supra, at pp 846-847; see, also, Note, the Fundamental Right to Family Integrity and Its Role in New York Foster Care Adjudication, 44 Brooklyn L Rev 63, 84-96.) Although foster parents and children may develop emotional ties, the natural parent retains a paramount right to raise the child. Foster parents develop such ties at their peril. (Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, supra.) A foster parent has no recognized preference for adoption until the lapse of 18 months (Social Services Law, § 383; see, also, People ex rel. Ninesling v Nassau Co. Dept. of Social Servs., 46 NY2d 382, supra), except where the natural parent’s rights have terminated (see Social Services Law, § 384-b). Thus, the court finds that the concerns expressed by counsel do not tip the public policy scale in *44 favor of an immunity from suit (or, more accurately, nonrecognition of a cause of action).
The court additionally observes that the county is obliged to contact and observe the foster home and determine whether the foster child is receiving adequate supervision. (18 NYCRR 428.3 [e] [2].) Seemingly, negligent or inadequate supervision would serve as a basis for termination of foster care services. It would be incongruous to permit negligent supervision to serve as a basis for termination of foster care service and allow the relationship of foster parent-child existing at the time of the event to preclude a cause of action for negligent supervision. (Indeed, the county’s support of the foster parents’ motion for dismissal is somewhat puzzling in view of its status as legal custodian of the infant plaintiff, the constitutional mandate to protect his safety, and the duty to remove the child upon detecting inadequate supervision.) Further, “[t]he consideration of public policy stated in Holodook (<supra, p 45) — the potential strife between parent and child created by litigation and the risk of a third-party claim against the parent diminishing the value of the child’s recovery — have no application here, where the interests of parent and child are united, and no liability of the parent is threatened.” (Bartels v County of Westchester, 76 AD2d 517, 522, supra.)
In sum, the court concludes that public policy favors recognition of a cause of action against foster parents for negligent supervision. Therefore, the court concludes and finds that the complaint states a cause of action against the Talbots, and their motion to dismiss is denied.