TALLMAN v MILTON

Docket No. 133730. Submitted October 1, 1991, at Detroit. Decided
     January 21, 1992, at 10:15 a.m.

William and Dorothy Tallman brought an action in the Macomb
     Circuit Court against Debbie Milton and others, seeking cus-
     tody pursuant to the Child Custody Act of a child born to
     Milton who had been placed in the plaintiffs' physical custody
     pursuant to a foster parent agreement with the Department of
     Social Services. The circuit court, Robert J. Chrzanowski, J.,
     dismissed the action on the bases that another action involving
     the same parties and the same claim had already been initiated
     in the Wayne Probate Court and that the circuit court lacked
     jurisdiction. The plaintiffs appealed.

     The Court of Appeals *held:*

     1. Circuit courts have subject-matter jurisdiction of child
     custody disputes. The issue whether a third party can bring a
     custody action in circuit court is an issue of standing, rather
     than jurisdiction.

     2. Persons who are foster parents pursuant to an agreement
     with the Department of Social Services have no standing to
     seek custody pursuant to the Child Custody Act of a foster child
     in their care where the parental rights of the natural parents
     have not been terminated.

     Affirmed.

*Lawrence S. Katz,* for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, and *Judy A. Hartsfield,*
Assistant Attorney General, for the Department of
Social Services.

Amicus Curiae:

*Victor, Robbins & Bassett* (by *Richard S. Victor*),
for the State Bar of Michigan Family Law Section.

Before: SHEPHERD, P.J., and HOLBROOK, JR., and CONNOR, JJ.

SHEPHERD, P.J. Plaintiffs, William and Dorothy Tallman, appeal as of right from the Macomb Circuit Court's September 28, 1990, opinion and order dismissing their complaint for custody of Jeanette Brandon. The Tallmans were Jeanette's foster parents. They commenced this action pursuant to the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* The trial court dismissed this matter on the alternative grounds of MCR 2.116(C)(6) ("[a]nother action has been initiated between the same parties involving the same claim") and MCR 2.116(C)(1) ("[t]he court lacks jurisdiction over the person or property"). We affirm, albeit on different grounds.

The following facts, which are generally not disputed, are taken largely from the parties' briefs filed in this appeal and in Docket No. 140891, a pending application for leave to appeal from the Wayne Circuit Court's denial of leave to appeal from the decision of the Wayne County Probate Court that will be discussed *infra*. On June 14, 1984, defendant Debbie Milton, then age fifteen and a ward of the court, gave birth to Jeanette Brandon. On July 28, 1984, Jeanette was placed in plaintiffs' physical custody pursuant to an "Agency/Foster Parent Agreement" between the Department of Social Services and plaintiffs, which provides in part:

> The Department agrees:
>
> * * *
>
> 5. To share with the foster parents such information about the child, including background, placement planning and visitation rights of the natural family, that will help the foster family to

meet the child's needs and not to require the foster family to accept a child, if, in their opinion, it would not be in the best interests of the child or the foster family;

\* \* \*

8. To provide an explanation for removing a child from the foster home and to provide an opportunity for the foster parents to help prepare the child for this separation; and to provide at least 3 days notice before removing any child who has been in the foster home for more than one month, unless the removal is required by a court order or emergency;

\* \* \*

12. To provide local office administrative review of all decisions to move a child who has been in placement for more than six months to another foster care placement when the foster parent objects to the change.

The foster parents agree:

\* \* \*

8. To accept the agency's final responsibility for placement decisions;

\* \* \*

10. To cooperate with the agency in the plan of care for each child and to share all information about the child which might be significant to continued planning;

11. To cooperate in planned visits or placement with the child's natural parents, or with other persons important in the child's life.

Jeanette's father died in February 1988 as a result of cancer.

At a January 23, 1990, dispositional review hearing pursuant to chapter 12A of the Probate Code, MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* (sometimes referred to as the Juvenile Code), held in the Wayne County Probate Court, the DSS recommended that the permanent custody petition

be dismissed because the child's paternal grandparents, the Brandons, came forward in 1989 and expressed a desire to care for Jeanette and her sister Doris and to serve as their legal guardians. The referee adopted this recommendation and ordered increased visitation with the grandparents.

In March 1990, plaintiffs petitioned the DSS to modify visitation, requested independent psychological evaluation of all interested parties, and requested reassignment of Jeanette's case to a different caseworker. On April 10, 1990, plaintiffs filed a petition in probate court to intervene as a party. The hearing was set for July 31, 1990. On July 30, 1990, plaintiffs filed the instant action pursuant to the Child Custody Act in the Macomb Circuit Court. The DSS filed a motion to dismiss the circuit court proceedings "on grounds of lack of jurisdiction given the probate court's continuing jurisdiction over Jeanette." Meanwhile, the probate court held matters in abeyance until the circuit court ruled.

On August 31, 1990, defendant Milton, abducted Jeanette and her sister from their grandparents' home.

On September 26, 1990, the circuit court granted the DSS' motion to dismiss, indicating that it "reluctantly conclude[d] that it should not exercise jurisdiction under the Child Custody Act of 1970 in this case" because of the pending Wayne County Probate Court proceeding.

On October 3, 1990, defendant Milton returned the children to the DSS. The DSS asserts in its brief:

The children's physical condition appeared fine. The children said that they wanted to stay together and that they did not want to go back to their foster homes. The children were placed together on October 3, 1990 in foster care at Christ

Child House where they received a complete psychological and physical assessment as well as being observed. They remain[ed] at Christ Child House until further order of the probate court.

On October 31, 1990, the referee granted plaintiffs the right to intervene in the pending juvenile proceedings in probate court and, according to DSS' brief, "granted visitation for the mother [defendant Milton], the plaintiffs, the other foster parents [?] and the paternal grandparents under the Department's supervision." On December 12, 1990, Wayne County Probate Judge Frances Pitts reversed the decision of the referee, ruling that there was no statutory basis for plaintiffs to have standing to intervene. And, although there was no statutory basis for visitation with plaintiffs, the probate court allowed it if the referee determined it to be in the best interests of the child.

Plaintiffs filed an application for leave to appeal from the probate court's order on December 28, 1990, in Wayne Circuit Court. On February 19, 1991, the probate court ordered Jeanette and her sister returned to their natural mother, defendant Milton. On May 10, 1991, the Wayne Circuit Court denied plaintiffs' application for leave to appeal.

In this case, plaintiffs appeal as of right from the Macomb Circuit Court's order dismissing their complaint under the Child Custody Act. Plaintiffs also later in a separate filing with this Court, Docket No. 140891, sought leave from this Court to appeal from the Wayne Circuit Court's order denying them leave to appeal from the probate court's order precluding their intervention in the juvenile proceedings for lack of standing. As noted, we affirm the order of the Macomb Circuit Court. And, in a separate order issued this day in Docket No. 140891, we deny plaintiffs' application for

leave to appeal from the Wayne Circuit Court's order, thus denying plaintiffs a forum for their claim to gain custody of Jeanette.

Any inquiry into the rights of plaintiffs under the Child Custody Act must begin with the Michigan Supreme Court's opinion in *Ruppel v Lesner,* 421 Mich 559, 565-566; 364 NW2d 665 (1984), wherein the Court held:

> We conclude that where a child is living with its parents, and divorce or separate maintenance proceedings have not been instituted, and there has been no finding of parental unfitness in an appropriate proceeding, the circuit court lacks the authority to enter an order giving custody to a third party over the parents' objection. The Child Custody Act does not create substantive rights of entitlement to custody of a child. Rather, it creates presumptions and standards by which competing claims to the right of custody are to be judged, sets forth procedures to be followed in litigation regarding such claims, and authorizes the forms of relief available in the circuit court. While custody may be awarded to grandparents or other third parties according to the best interests of the child in an appropriate case (typically involving divorce), nothing in the Child Custody Act, nor in any other authority of which we are aware, authorizes a nonparent to create a child custody "dispute" by simply filing a complaint in circuit court alleging that giving custody to the third party is in the "best interests of the child." When, as in this case, the third parties are close relatives of the child, we must remember that, except for limited visitation rights, grandparents have no greater claim to custody than any other relative, or indeed any other persons. The rule adopted by the Court of Appeals would permit any person to file a circuit court action asking for change of the custody of a child living with parents who were not involved in a divorce or separation procedure. We

think it clear that the Legislature contemplated no such result.

This passage has been the source of some controversy in our Court. *Ruppel* makes it clear that the Child Custody Act does not confer substantive rights to custody. It also makes it fairly clear that ordinarily a nonparent cannot obtain custody of a child under the Child Custody Act. But what is not clear is how many exceptions there are to this general rule. Some panels of this Court have found that a third party may bring a custody action under the Child Custody Act only where (1) divorce or separate maintenance proceedings have been instituted or (2) where there has been a finding of parental unfitness under MCL 712A.19a; MSA 27.3178(598.19a).[1] Other panels, however, have held that nonparents may seek custody under the Child Custody Act in a third instance—where the child is not living with the parents or is living with the person seeking custody. See, e.g., *Doung v Hong,* 191 Mich App 462, 463; 478 NW2d 922 (1991).[2] This conflict has apparently been resolved in favor of the latter position. *Id.*; Administrative Order No. 1990-6, 436 Mich lxxxiv.

In this case, the trial court clearly had subject-matter jurisdiction to entertain an action under the Child Custody Act. *Duong, supra.* The question whether it had the authority to award custody to a nonparent in this case is properly analyzed as a matter of standing. *Id.* To have standing one must have a legally protected interest that is in jeop-

[1] See, e.g., *Hastings v Hastings,* 154 Mich App 96, 100-101; 397 NW2d 232 (1986).

[2] The panel in *Duong* held that where a child is living with a third party, that party has standing to petition for custody under the Child Custody Act. However, the parties in question were friends of the natural parents who had obtained custody by the voluntary act of the parents.

ardy of being adversely affected. *Health Central v Comm'r of Ins,* 152 Mich App 336; 393 NW2d 625 (1986). Plaintiffs' rights, and obligations, are set out in their Agency/Foster Parent Agreement with the DSS. There is not among them the right to seek permanent custody of Jeanette under these circumstances. Rather, plaintiffs agreed to cooperate with the DSS in placing Jeanette with her natural parents if possible.

Plaintiffs' relationship with Jeanette was governed by their agreement with the DSS and statute. In another context, our Supreme Court in *Mayberry v Pryor,* 422 Mich 579, 586-587; 374 NW2d 683 (1985), summarized the purpose of foster care:

> Foster parents and foster children are not related by consanguinity, marriage, or adoption. See MCL 722.111(f); MSA 25.358(11)(f). They are brought together by means of a preexisting contractual arrangement between the DSS and the foster parents in which the latter are compensated for expenses incurred in caring for the child. See MCL 400.115a-c, 712A.25; MSA 16.490(25a)-(25c), 27.3178(598.25). The foster parents and home must conform to specific statutory and regulatory guidelines and the DSS is required to monitor them. See MCL 722.111 et seq.; MSA 25.358(11) *et seq.*; 1979 AC, R 400.191 *et seq.*
>
> In addition, placement of the child in a foster family home generally is not voluntary. It often occurs after the child has been physically removed from the custody of the natural parent or other caretaker by order of the probate court after an adversary hearing due to neglect, mistreatment, or abandonment. See MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* Even a "voluntary" relinquishment of a child for foster care placement may be induced by threats of court proceedings or the product of uninformed consent. *Smith v Organization of Foster Families,* 431 US 816, 834; 97 S Ct 2094; 53 L Ed 2d 14 (1977).

Finally, the goal of foster care is not to create a new "family" unit or encourage permanent emotional ties between the child and foster parents. Foster care is designed to provide a stable, nurturing, noninstitutionalized environment for the child while the natural parent or caretaker attempts to remedy the problems which precipitated the child's removal or, if parental rights have been terminated, until suitable adoptive parents are found. *Smith*, 431 US 861-862 (Stewart, J., *concurring*). See also MCL 400.18c(2), 712A.19; MSA 16.418(3)(2), 27.3178(598.19).

The *Mayberry* Court also quoted at length from *Andrews v Otsego County*, 112 Misc 2d 37; 446 NYS2d 169, 172-174 (1982), pointing out various "considerations [found to be] equally applicable to this state's system of providing foster care." *Mayberry*, 422 Mich 592. Among those considerations were the following:

"Foster parents must strive to provide a stable environment and at the same time, encourage, rather than discourage, the relationship of the foster child and natural parent and ease the return of the child to the natural parent. . . .

"[G]eneral legislative policy prefers the ultimate return of the child to the natural parent." [*Mayberry*, 422 Mich 590-591, quoting *Andrews, supra.*]

We hold that a DSS foster parent has no standing to seek custody of the foster child under the Child Custody Act when the parental rights of the natural parents have not been terminated.[3]

We agree with defendant DSS that the Juvenile Code evinces a legislative intent to keep families together and to reunite a child, over whom the

---

[3] Even though Jeanette was in plaintiffs' custody when they initiated the circuit court action, this holding does not conflict with *Duong*, because *Duong* did not involve DSS foster parents. This opinion does not in any way relate to the rights, if any, of a DSS foster parent to seek either custody or adoption of a child after the probate court has terminated parental rights.

probate court has taken temporary jurisdiction, with its natural parent unless to do so would cause a substantial risk of harm to the child's life, physical health, or mental well-being. MCL 712A.19a(4); MSA 27.3178(598.19a)(4). This objective, which foster care is also intended to subserve, would be drastically undercut if foster parents under contract with the DSS had standing to compete with natural parents by instituting an action and arguing that an award of custody to the foster parents would be in the best interests of the child. The foster parents were engaged by DSS and by the probate court to facilitate family reunification. Foster parents exist to serve both the child and the natural parents. This is not consistent with giving standing to the foster parents to get into a custody war with the same people (the natural parents) they were hired to help.

We have this day also denied leave in Docket No. 140891, for the reason that in the context of a probate proceeding where the issues relate to parental fitness

> [i]t is totally inappropriate to weigh the advantages of a foster home against the home of the natural and legal parents. Their fitness as parents and the question of neglect of their children must be measured by statutory standards without reference to any particular alternative home which may be offered the children.
>
> In the absence of evidence of neglect such as we have referred to, the very preamble to the sections of the probate code dealing with juveniles establishes the strong preference for parental custody. [*Fritts v Krugh,* 354 Mich 97, 115; 92 NW2d 604 (1958).]

Here, too, if plaintiffs were allowed standing in probate court, the moment a DSS foster parent is engaged, the foster parent becomes a potential

adversary of the court, the DSS, and the natural parents.[4]

Affirmed.

---

[4] Plaintiffs argue that we should attach significance to the fact that more than six years elapsed between the child's being placed with them and the date she was finally returned to her mother. This we decline to do. Nothing in our analysis is dependent on the amount of time the probate court retains jurisdiction. In any event, at the time of the child's birth, the mother was fifteen years old and, herself, under the jurisdiction of the probate court. We can easily see that the time was needed to bring the mother to the point where she could begin to take care of her child. From the moment plaintiffs took the child into their home, they were on notice that at some point in time, the probate court might find that the mother was ready to assume her proper role.