OPINION OF THE COURT
Harvey M. Sklaver, J.
This matter is before the court on the Law Guardian’s motion to modify an order which extended placement of the children with the New York City Commissioner of Social Services (Commissioner) until July 20, 1992. The original dispositional placement and the two extensions of placement were "open” placements with the Commissioner in that the court did not direct that the children reside with any specific person or agency as authorized by Family Court Act § 1017. The modification sought is that the Commissioner be directed not to place the children with the maternal great-aunt, Barbara L. as caretaker. The Commissioner supports the Law Guardian’s motion.
It appears that the children were placed in Ms. L.’s care under supervision of the Commissioner’s Bronx Division of Adoption and Foster Care Services (DAFCS) in September 1988, and summarily removed from her care on August 6, 1991. It further appears that Ms. L. pursued her administrative remedies pursuant to Social Services Law §§ 400 and 22 (1). A fair hearing was held and on December 11, 1991, the State Commissioner, after a hearing and report by an Administrative Law Judge rendered his decision that the City Commissioner’s removal of the children from Ms. L.’s care was improper and that they should be promptly returned to her care.[1] The Law Guardian, having learned of the decision, brought the instant motion to restrain the Commissioner from returning the children to Ms. L. The Law Guardian contends that since she was not a party to the fair hearing she is not bound by the determination and is not precluded from bringing the instant motion. The Commissioner, apparently of the *440 view that a local Social Services official cannot appeal the determination of the State Commissioner rendered after a hearing before an Administrative Law Judge, now supports the Law Guardian’s motion.[2]
I
Before the court can address the merits of the motion it must first decide a preliminary question of powers, namely, whether it can modify its own prior order so as to overrule or circumvent the decision of the State Commissioner and the statutory scheme of appeal therefrom.
With respect to force of the fair hearing determination, subdivision (9) (a) of Social Services Law § 22 provides: "All decisions of the commissioner pursuant to this section shall be binding upon the social services districts involved and shall be complied with by the social services officials thereof.” However, subdivision (9) (b) continues "Any aggrieved party to an appeal, including a social services official provided an application by any such social services official has not been determined by any federal agency to be in violation of federal law, may apply for review as provided in article seventy-eight of the civil practice law and rules.” (Emphasis added.) An examination of the history of these two paragraphs illuminates their scope and limitations. On July 13, 1978, the Court of Appeals in Matter of Beaudoin v Toia (45 NY2d 343) construed former section 135-c of the Social Services Law (the forerunner of Social Services Law § 22 [1]) as prohibiting the local Commissioner from appealing an adverse fair hearing determination by the State Commissioner. However, on July 11, 1978, two days prior to the rendition of that decision, the Legislature repealed section 135-c (and other sections) and enacted present section 22 (L 1978, ch 473). Subdivision (9) (b) now specifically allows a local Social Services official (here the Commissioner) to seek judicial review by way of a CPLR article 78 proceeding. However, the enacting legislation provided that subdivision (9) (b) was to be applicable only to appeals from decisions *441 of the State Commissioner rendered after the effective date of the law. Thus, the Court in Beaudoin did not have occasion to pass on that subdivision.
Subdivision (9) (b) does set forth a limitation on the right of a local official to seek judicial review, that limitation being imposed when a Federal agency has determined that such review would be a violation of Federal law. The reasons for that limitation, including the loss of Federal funds, and prior legislative attempts to deal with the issue are explained at length in Matter of Beaudoin v Toia (supra). The method selected by the Legislature and noted in Beaudoin (see, 45 NY2d, at 349, n [last sentence], supra) was the prohibition against judicial review if it would violate Federal law. Thus, absent Federal prohibition a local official may bring an article 78 proceeding to review a fair hearing determination (New York State Elec. & Gas Corp. v Fortier, 106 AD2d 715, 717; Matter of Weinberg v Perales, 121 AD2d 729, 730). Significantly, neither the Law Guardian nor the Commissioner has directed this court’s attention to any Federal rule prohibiting the Commissioner from seeking an article 78 review of a fair hearing decision not to remove a child from a particular foster parent.[3]
With respect to the manner of judicial review, Social Services Law §22 (9) (b) mentions article 78 as a review procedure but does not state that it is the exclusive one. Nevertheless, in Matter of Leonora M. v Krauskopf (104 AD2d 755, 756), the Court held that an article 78 proceeding is the exclusive method of review of a fair hearing determination (citing Matter of Kim W., 58 NY2d 811, revg Matter of Walker, 87 AD2d 435 for reasons stated in Justice Markewich’s dissenting opn in the App Div).
A point raised by the Law Guardian is that since she was not notified of the fair hearing the children were not represented. But the interests of the children were represented. They were represented by the Commissioner who is statutorily *442 charged with the responsibility for their welfare, care and supervision (see generally, Social Services Law §§ 395, 398 [6] [c], [g] [1]). In People ex rel. Ninesling v Nassau County Dept. of Social Servs. (46 NY2d 382, 386) the Court said: "The administrative and judicial review afforded an aggrieved foster parent under this statutory scheme [fair hearing and article 78 review] * * * provides a sufficient forum for the consideration of the interests of foster children and parents to satisfy the demands of due process” (emphasis added). And apart from due process "When a county places a child under foster family care, it has an obligation to exercise care in the placement * * * and to provide continuing supervision during the placement * * * A county does not, by the mere fact of placement, relinquish its role as parens patriae nor its continuing obligation to protect the child’s health, safety, and welfare. Although the precise bounds of duty and liability have yet to be defined, a county may be held liable for negligent placement or supervision” (Andrews v County of Otsego, 112 Misc 2d 37, 39). Here the Commissioner did act to protect the interests of the children. The Commissioner, believing that the interests of the children required their removal from Ms. L.’s care, did so and, at the fair hearing, opposed their return to Ms. L. That the Law Guardian now believes her participation at the fair hearing would have engendered a different result is not a basis for this court to bypass the statutory scheme of review. While the Legislature ordained that Law Guardians be appointed for children in Family Court proceedings (Family Ct Act §§ 241, 249; but see, Matter of Larisa F. v Michael S., 122 Misc 2d 520) it does not follow that the Legislature intended they be appointed in all proceedings involving or which affect the children (e.g., custody proceedings in which such appointment is discretionary, Matter of Evans v Evans, 127 AD2d 998). A fair hearing is an administrative one, not a judicial one. Since the determination will not result in the children’s loss of liberty or property the appointment of a separate Law Guardian or counsel for them does not appear to be constitutionally required (compare, In re Gault, 387 US 1). Thus, the Legislature not having seen fit to require Law Guardians in fair hearings it is not for this court to make any determination based on the absence of one in that proceeding.
It may be noted in passing that the time for the Commissioner to institute the article 78 proceeding has not yet expired and since the Commissioner supports the Law Guardian’s instant motion it may be inferred that the proceeding *443 will be brought. At that time the Law Guardian may move to intervene (CPLR 7802 [d]). Also, when the proceeding is brought the Commissioner may move in the Appellate Division for a stay (Social Services Law § 22 [9] [c]).
II
Apart from the procedural basis for denying the motion, an examination of the State Commissioner’s decision would appear to indicate that he considered all of the substantive points raised by the Law Guardian herein. The decision was lengthy and the issue decided was "whether * * * the removal of Maurice M. and Gloria M. from the Appellant’s foster care [was] a proper exercise of the city’s discretion” (State Commissioner’s decision, at 3), not merely whether the City agency abided by State regulations. A reading of the decision reveals that the State Commissioner did consider the evidence as to sexual abuse, drug and alcohol use and the condition of Ms. L.’s home. As to the charges of physical abuse and Maurice’s psychological condition it appears that while the State Commissioner did not mention Dr. Cahill’s letter nor the psychological evaluation they appear to have been part of the record. The findings of the medical examination referred to in the decision are contained in Dr. Cahill’s letter and the reference to Maurice’s claim that he is married is apparently from the last paragraph on page 1 of the psychological report.[4]
III
Both the Commissioner and the Law Guardian urge that this court has continuing jurisdiction over proceedings relating to the children and that Family Court Act § 1061 authorizes the court to modify its prior extension of placement order. As an abstract statement of principle, that is true. But, when the principle must be applied to specific issues greater analysis is required. In the present case the amorphous con *444 cept of continuing jurisdiction need not be addressed since it flows from Family Court Act § 1061 which specifically deals with modifications of orders. Section 1061 provides that: "For good cause shown and after due notice, the court * * * may stay execution, of arrest, set aside, modify or vacate any order issued in the course of a proceeding under this article.”
Besharov, Practice Commentary (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1061, at 462) discusses the relation between this section of general application and other sections of specific application and states that "barring unusual circumstances * * * it would be improper to use section 1061 when the Legislature clearly intended other procedures to govern.” This is a general principle of statutory construction. With respect to the instant case, since the Legislature clearly stated that judicial review of a fair hearing determination be had through an article 78 proceeding (Social Services Law § 22 [9] [b]), this court cannot under the guise of Family Court Act § 1061 overrule or circumvent that determination.[5] It has been held that a foster care review proceeding (Social Services Law § 392) cannot be used to bypass the grievance procedure set forth in Social Services Law §§ 400 and 22 (9) (b) (Matter of Kim W., supra), nor can a habeas corpus proceeding be used for that purpose (Matter of Leonora M. v Krauskopf, supra).
Family Court Act § 1061 requires a showing of good cause in order for the court to modify a prior order. Since there was a full airing of the issues before the Administrative Law Judge which was reviewed by the State Commissioner’s designee and an article 78 proceeding to review the State Commissioner’s determination is presently available this court concludes that, even if it had the jurisdiction to rehear the matter and issue a new order, good cause had not been shown and it would be an improvident exercise of discretion for the court to do so in this instance.
IV
This decision should not be read beyond the context of this *445 case which contains two key factors, namely, an extended airing of the facts before the Administrative Law Judge which was reviewed by the State Commissioner’s designee and the present availability of an article 78 proceeding to review the State Commissioner’s determination. The court intimates no opinion as to how it would rule in the absence of one or both of those factors.

. While the record is not complete as to the administrative proceeding, this court infers that in a purely legal sense the decision was made by a person designated by the State Commissioner pursuant to Social Services Law § 22 (2) following the report by an Administrative Law Judge, after a hearing. 18 NYCRR 443.5 (c) provides that the foster parent may request a fair hearing in accordance with Social Services Law § 400, but part 443 of the Regulations of the Department of Social Services does not spell out the fair hearing procedure. Since the fair hearing decision indicates nothing to the contrary, this court infers that the State Commissioner’s designee adopted the report of the Administrative Law Judge who presided at the hearing.

. Carrieri, Practice Commentaries (McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 400,1992 Pocket Part, at 154) states: "The [State fair hearing] decision is binding upon the agency but not binding upon the foster parents in that the foster parents may review the decision by way of an Article 78 proceeding in the supreme court, which is the exclusive remedy of the foster parents”. As will be shown, this statement as regards the decision’s binding effect on the local agency is too broad a generalization and, as regards section 400 specifically, appears to be incorrect.

. 18 NYCRR 358-6.1 (b) does state that the State Commissioner’s "decision is final and binding upon social services agencies and must be complied with”. However, part 358 of the Regulations is contained in chapter II, subchapter B, article 1 of the Regulations which relates to the determination of eligibility for public assistance, a matter intertwined with Federal funding and Federal law. In any event, to the extent that the regulation seeks to deny a local agency’s right of judicial review when not prohibited by Federal rule it is contrary to statute and, thus, invalid (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).

. On page 4 of the decision is the following: "The events leading up to this removal were set in motion when four year old Maurice, in a family court extension of placement proceeding, made comments about being sexually abused by someone. Inquiries were made, which included a thorough medical examination of Maurice and Gloria, and which rather quickly revealed the matter to have no more basis in reality than, for example, four year old Maurice’s additional claim that he was married. However, the investigation also led to the filing of a State Central Register of Child Abuse and Maltreatment (Central Register) report, which was investigated by the City through its Office of Confidential Investigations (OCI).”

. Whether this court can make a contrary order by reason of a change of circumstances occurring after the fair hearing determination need not be addressed at this time since neither the Law Guardian nor the Commissioner asserts that there has been any change of circumstances. On the other hand, if the Commissioner and Law Guardian believe that they have newly discovered evidence which was not presented to the Administrative Law Judge they can ask the State Commissioner to reopen the fair hearing (Matter of Leonora M. v Krauskopf, supra, 104 AD2d, at 757).