# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
August 18, 2016

*In re* TRAVIS, Minors.

Nos. 330633 & 330634
Wayne Circuit Court

Family Division
LC No. 14-516124-NA

Before: MURPHY, P.J., and STEPHENS and BORRELLO, JJ.

PER CURIAM.

Respondents appeal as of right from the order of the family division of the circuit court terminating their parental rights to their three minor children. We affirm.

## I. FACTS

Petitioner filed a petition for wardship over the youngest child, D.T., because respondent-mother had received no prenatal care, was living in an abandoned home that was boarded up and without utilities, and had made no provisions to care for D.T., who was born with severe medical conditions. Two months later, petitioner sought wardship over the older two children as well, because they appeared malnourished, and the basement of the family home was filled with raw sewage and feces. Both respondents had a history of drug abuse. Over the 16 months that followed, regular permanency planning hearings took place, but finally a petition for termination was authorized.

At the termination hearing, foster-care workers testified that respondents' housing continued to be problematic. The worker also said that both parents had difficulties interacting with the children, and had missed half of their drug screens. Respondents also had a poor record of appearing for visits with the children and attending medical appointments for D.T. Further, neither respondent ever produced evidence of a legal source of income. The trial court concluded that respondent-father was in fact operating a house of prostitution, with respondent-mother as one of the prostitutes.

## II. REUNIFICATION SERVICES

Respondents argue that the trial court erred in concluding that petitioner had expended reasonable efforts to achieve reunification. The essence of this argument is that the petitioner failed to offer the specific services that were needed and failed to offer the services ordered for a sufficient period of time. In this case, neither respondent addresses the question of issue preservation, see MCR 7.212(C)(7). Neither respondent argues that they requested additional services or complained about the services that were offered. We do note that the respondents did lodge complaints about being required to attend visitations in Ann Arbor; however, petitioner moved the visitation site back to Wayne County long before the termination. We therefore deem this issue unpreserved, thus subject to review only for plain error affecting substantial rights. See *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

Where a court has taken temporary jurisdiction over a child, reasonable efforts must be made to reunite the child with the natural parents unless doing so would cause a substantial risk of harm to the child's physical or mental well-being. *Tallman v Milton*, 192 Mich App 606, 614-615; 482 NW2d 187 (1992), citing MCL 712A.19a(4). See also MCL 400.115b(2) (explaining that "the department shall assure, if necessary, the provision of appropriate social services to the child, parent, guardian, custodian, or person serving in loco parentis, to reinforce and supplement the parental capabilities, so that the behavior or situation causing the problem is corrected or the child is otherwise protected"). Where reasonable efforts toward reunification are required, but the petitioning agency has failed to allow the respondent a reasonable opportunity to participate in services, the result is a "hole" in the evidentiary record that renders termination of parental rights improper. *In re Mason Minors*, 486 Mich 142, 158-160; 782 NW2d 747 (2010).

In this case, respondents were offered abundant services, and on appeal respondents do not so much complain of a lack of services offered or address any particularized service that should have been offered, but instead argue that they were not given adequate time to participate in and benefit from the services being offered. The record reveals that respondents were offered parental training, individual counseling, drug treatment services and supervised visitation with all of the minor children. However, respondents' participation in these services was sporadic and ineffective. For example, a foster-care worker testified that respondents "were ordered to participate in parenting classes, a psychological evaluation, drug screening and substance abuse counseling," but that they "were discharged from individual counseling and drug abuse counseling for noncompliance because the providers couldn't contact them." The foster-care worker further reported that "there were a lot of missed [drug] screens," and also "at least one positive screen for mother and I believe two for father" indicating marijuana consumption. Respondents were out of contact with the petitioner for significant periods of time during which they had no contact with any of the children. The worker described respondents' compliance with their treatment plans in general as "[s]potty at best," elaborating that communication "was always a really big issue," in that she sometimes had difficulty contacting respondents, including when she needed consent for medical treatment for D.T. The foster-care worker added, "sometimes when it seemed like they were beginning to make an effort and the other times they would sort of drop off the radar for periods of time or they would comply with something for a little while and then stop," and that this tendency infected their participation in parenting classes, over which they generated some "positive review" but then "began missing more classes." Neither party offers record evidence to the contrary.

We are aware that respondent-mother has offered information to this Court that petitioner failed to offer her services to facilitate her separation from respondent-father. Specifically, she asked this Court to consider information that respondent-father has been accused of human trafficking. She does not, however assert that she told either a counselor or a social worker that she was a victim, nor does she offer any expert or other evidence upon which this Court could find that she suffered a disability, psychological or otherwise, that precluded her from making a revelation. In fact, the record reveals that she placed ads for sexual services in a publication when respondent-father was in custody. The Court is generally aware that respondent-mother may have been a victim of abuse who feared retribution from respondent-father, even in his absence. However, there fails to be any evidence in the record from respondent-mother, such as an affidavit from a counselor or a therapist, which would support such a finding by this Court. In any case, it is clear that the trial court, while aware that respondent-mother engaged in prostitution, had no knowledge that such activities were coerced. As to the services that were provided to her, respondent-mother acknowledges that she continued to miss drug screens and visitations but asserts that at the time of termination she was doing better.

Respondent-father similarly asserts that he "was showing progress toward further compliance with his Treatment Plan" without offering details on the degree of progress or record citations to prove it. He protests that it was unreasonable to ask respondents to visit the children in Ann Arbor for a time, but fails to explain why the transportation assistance petitioner offered kept Ann Arbor out of reach. He complains that "the visits were scrutinized as to what 'supplies' they brought," but does not explain why such scrutiny is not a valid part of assessing parenting skills.

Both respondents suggest not that they had become fit parents, but only that they were progressing toward that goal. The implication is that they should have been given more time. We are reminded that the children were in care for a year and a half. However, "the Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms Minors*, 187 Mich App 644, 647; 468 NW2d 315 (1991). Respondents were thus entitled to reasonable efforts at reunification, not endless efforts. Further, "[w]hile [the agency] has a responsibility to expend reasonable efforts to provide services to secure reunification; there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. In this case, the trial court did not clearly err in concluding that respondents fell short of fulfilling their "commensurate responsibility."

For these reasons, respondents fail to show that the trial court clearly erred in concluding that petitioner expended reasonable efforts to achieve reunification.

## III. STATUTORY BASES FOR TERMINATION

Respondents argue that the trial court erred in concluding that termination of their parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide as follows:

-3-

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent-mother reports that she has separated from respondent-father as a result of federal criminal proceedings, and insists that with respondent-father out of her life she is now poised to provide proper care and custody for her children.[1] However, this argument does nothing to challenge the trial court's recognition that, at the time of decision, "mom and the other women in the home are prostitutes and dad is the manager and he's a participant some of the time." She does not effectively challenge the trial court's finding that respondents have never offered the children a suitable home. Either of those findings supports the trial court's conclusions that (*i*) and (g) were proven. The record also supports the trial court's conclusion that the children would likely be subject to harm if returned to respondent-mother's care. Further, respondent-mother cites no authority for the proposition that an appellate court may look to post-termination factual developments to conclude that a trial court clearly erred in concluding that statutory termination criteria were satisfied. See *In re Dahms*, 187 Mich App at 647.

---

[1] We have declined to examine the exhibit respondent-mother offers to show respondent-father's involvement with the federal criminal justice system, on the ground that in offering it respondent-mother is attempting to enlarge the record. See MCR 7.210(A) ("Appeals to the Court of Appeals are heard on the original record.").

Respondent-father in turn merely protests that he was "showing progress toward compliance" with his service plan, not that he had in fact shown the court that he had achieved what was required for reunification. But for his complaint that for a time visitation was in Ann Arbor, he does not criticize the services offered. As to the argument about the visitation, the record evidence is that he was offered transportation assistance in the form of money, train tickets and rides. Unemployed, he offers no reason as to why he did not avail himself of that assistance. His principal argument is that he should have been given more time beyond the 18 months that the children were in care. We disagree.

For these reasons, respondents fail to show that the trial court erred in concluding that termination of their parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## IV. BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Respondents argue that the trial court erred in concluding that termination of their parental rights was in the best interests of the children.

An appellate court reviews "for clear error . . . the court's decision regarding the child's best interest." *In re Trejo Minors*, 462 Mich at 356-357. Although termination of parental rights requires proof of at least one of the statutory termination factors on clear and convincing evidence, "the preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

In delivering its conclusions on best interests, the trial court stated :
> . . . I believe all these children have special needs, but [D.T.] is by far the worse [sic]. Mom and dad are not remotely able to parent [D.T.] but they aren't able to handle the other two children either. They aren't willing to make the changes in their lifestyle. That would allow them to do that kind of thing. What this moves me in the direction of doing is terminating parental rights.

> * * *

> . . . [T]hese children are at critical ages in terms of their intellectual development. Continuing to be in foster care is a bad thing. They . . . strongly need permanence, particularly [D.T.]. But [the other two children] do too. One of the children has been diagnosed as having some special needs, and the other one I think that will be diagnosed in time. . . . They need to get out of foster care. They need to be adopted.

> . . . These children's ages militate in favor of termination, giving up on trying to rehabilitate the family.

. . . [W]ith [D.T.] being in care 20 months, [and the others] being in care 18 months, that's a long time for children like this. The strength of their relationship with mom and dad has gone down a great deal. . . .

* * *

. . . And for children with special needs we need to be even more careful regarding disruptions. If anything, that militates in favor of a termination and adoption not disturbing the children's surroundings.

* * *

. . . [D.T.] is by himself, and a termination and adoption will split the children. The bond between [D.T.] and the others is far weaker that it was 18 months ago. But again, the children haven't had that much dealings together in all this time. I would point to this militating weakly against termination of parental rights.

. . . I'm going to find that termination is in each of the children's best interest with regard to each of the parents. It's especially the case regarding [D.T.]. But it is present by well more than a preponderance of legally admissible evidence regarding the other two children.

Respondent-father states that the trial court failed to consider the best interests of the children individually. See *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). However, in delivering its findings and conclusions concerning the children's best interests, the trial court took pains to recognize the needs of each child, and specially noted that it was not considering them collectively, or merely projecting D.T.'s special needs over the older two children.

Both respondents assert generally that visits went well for all involved, but fail to rebut indications that they did not consistently interact with the children appropriately, or that the oldest child explicitly expressed his wish not to have further visits with respondents. Respondent-mother also argues adoption plans as they were taking shape would result in splitting up the children. The trial court did in fact recognize that eventuality as militating against termination, but only "weakly" so because "the children haven't had that much dealings together in all this time."

The court specifically found that residency with respondents was not suitable for children, because they kept their houses in poor condition and ran prostitution operations from them. This finding is amply supported by testimony from the foster-care workers and, as to the prostitution, is admitted by the respondent-mother. During the pendency of the case they reported at least five addresses. The ones that were inspected were in poor repair, one with feces in the basement and another without electricity. Other addresses were never offered for inspection or verification. Neither parent provided any source of legal income with which to procure suitable housing.

For these reasons, respondents fail to show that the trial court clearly erred in concluding that termination of their parental rights was in the children's best interests.

Affirmed.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra